O’NIELL, Chief Justice.
 

 The matter in contest in this suit, between Earl K. Long and James A. Gremillion, is the nomination by the Democratic party for the office of Secretary of State, to be voted on in the general election to be held on the 16th of April.' The nomination of a candidate for a state office by the Democratic party in Louisiana assures his election. And it is so stated in the pleadings of the parties to this suit. But the big question in the case, in which the people generally are concerned, is whether a recognized political party, acting through its state central committee, shall be allowed to manage its own affairs, without interference by the courts, so long as the committee is acting within the scope of its authority, and within the law.
 

 The facts of the case are not disputed. In the Democratic primary election held on the 16th of January, E. A. Conway and James A. Gremillion were candidates for the nomination for the office of Secretary of State. Conway, who was the incumbent, received a majority of the votes. At a meeting of the State Central Committee on January 25th, Conway was declared the nominee. At the same time the committee called a second primary to be held on February 20th, for the nomination of a candidate for Governor, and candidates for other state offices, in the cases where no one had received a majority .of the votes cast in the first primary. Conway died on February 19th; and Earl K. Long, being Governor of Louisiana, appointed Conway’s son, E. A. Conway, Jr., to serve during the unexpired part'of his father’s term of office. It
 
 *802
 
 became the duty then of the State Central Committee, under the provisions of Section 31 of Act No. 97 of 1922, known as the primary law, to select a candidate for the Democratic party for the office of Secretary of State, for the full term, of four years, to be voted for in the general election to be held on the 16th of April. Wade O. Martin, who was then chairman of the committee, on Friday, the 23rd of February, called a meeting of the committee to be held in Baton Rouge on the next day, Saturday, the 24th of February, at 8 p. m., for the transaction of such business as might be brought lawfully before the committee. The committee met, pursuant to the call, and adopted a resolution selecting Earl K. Long as the nominee of the Democratic party for the office of Secretary of State. Of the 104 members composing the committee, 94 members voted, either personally or by proxy; and the vote
 
 stood
 
 3 for Conway, 40 for Gremillion, and 51 for Long. The chairman of the committee issued his certificate of the selection of Long as the nominee, and it was filed in the office of the Secretary of State on the 25th of February. The Secretary of State, in due course, tabulated the returns of the second primary, promulgated the result, and sent his certificate thereof to Wade O. Martin, Chairman of the State Central Committee. On the 29th of February, Martin, as chairman of the committee, and under the authority vested in him by the primary election law, called a meeting of the committee to be held in Baton Rouge on Saturday, the 2nd of March, at 9:30 a. m., for the purpose of declaring and certifying to the Secretary of State the names of the persons nominated in the second primary. At the meeting, as soon as the roll was called and it was found that a quorum was-present, a motion was made and adopted amending the call for the meeting so that the committee might act upon “such other and further matters as may [might] come before the committee.” Thereupon, a resolution was adopted, rescinding and annulling the selection which had been made on the 25th of February of Earl K. Long as the nominee of the party for the office of Secretary of State, and directing the Secretary of State not to have the name of Earl K. Long printed on the official ballot for the general election to be held on the 16th of April. The resolution was opposed by members who adhered to the selection of Long as the party nominee, on the ground — stated substantially — that after the selection of Long as the nominee was certified to the Secretary of State the committee had no authority in law to rescind the selection and select another nominee for the office. The committee then adopted a resolution selecting James A. Gremillion as the-nominee for the office of Secretary- of State, and directing the incumbent Secretary of State to have the name Of James A. Gremillion printed on the official ballot to be voted in the general election on the 16th of April, as the nominee of the party for the office of Secretary of State. That resolution was opposed also by the adherents to the nomination of Long, on the same ground on which the resolution rescinding the selection of Long was opposed, and on the further ground that Gremillion was ineligible by reason of his being defeated in the primary. It appears that the adherents to the nomination
 
 *804
 
 of Long, being then the minority faction, announced their withdrawal from the meeting, so that they could not be considered as acquiescing in the result, during the voting o.n the resolution rescinding the nomination^ of Long, and the resolution nominating Gremillion. For that reason it appears as if the resolutions were adopted without objection.
 

 On the 2nd of March, Earl K. Long filed a suit against Wade O'. Martin, Chairman of the Committee, and James A. Gremillion, E. A. Conway, Secretary of State, and H. Carey Cornish, Assistant Secretary of State, praying for a writ of injunction to prevent the printing of the name of Gremillion as the party nominee for the office of Secretary of State on the official ballot to be voted in the general election to be held on the 16th of April. Long prayed also for a mandatory injunction to compel the printing of his name on the official ballot as the party nominee; and he prayed for a temporary restraining order to prevent the chairman of the committee from certifying the name of Gremillion as the party nominee, and to prevent the Secretary of State from printing Gremillion’s name on the official ballot as . the party nominee; and Long prayed finally that the writs of injunction should be perpetuated. Judge James D. Womack, one of the two judges of the district court for the parish of East Baton Rouge, signed an order granting a rule on the defendants to show cause at 10 o’clock a. m. on the 11th of March, why the writs of injunction should not be issued; and at the same time the judge granted the restraining order as prayed fon
 

 On the 7th of March, Gremillion filed a petition in this court for writs of certiorari, prohibition and mandamus, and the court issued the writ of certiorari, and a rule on Judge Womack and Earl K. Long to show cause in this court on the 11th of March why the judge should not be prohibited from proceeding further with the trial of the case.
 

 Meanwhile, that is, on the 2nd of March, the new State Central Committee, whose members were elected in the primaries held on January 16th and February 20th, to serve during the next four years, met also in Baton Rouge, after the
 
 meeting
 
 of the old committee had adjourned; and the new committee was formally
 
 organized by the
 
 election of Frank J. Looney, Chairman, A. W. Newlin, Secretary, and Francis J. Whitehead, Assistant Secretary. Newlin was secretary of the'old committee, but was absent from the meetings on account of illness. The new committee adopted a resolution declaring that James A. Gremillion was thereby selected as the nominee, of the Democratic party for the office of Secretary of State, to be voted for in. the general election on the 16th of April. Frank J. Looney, Chairman, and Francis J. Whitehead, Assistant Secretary, of the new committee, filed a certified copy of the resolution with the Secretary of State. The new committee thus ratified the action of the old committee in rescinding the nomination of Long and in nominating Gremillion for the office of Secretary of State. Earl K. Long, therefore, on March 7th, filed a new suit in the district court for the parish of Eas,t Baton Rouge, asking for the same
 
 *806
 
 relief against Frank J. Looney, Chairman, and Francis J. Whitehead, Assistant Secretary, of the new committee, and against E. A. Conway, Secretary of State, and H. Carey Cornish, Assistant Secretary of State, and against James A. Gremillion, that Long had asked for against the defendants in his first suit. On that date Judge Womack rendered an ex parte order similar to the one which he had rendered in the first suit, ordering the defendants to show cause on the 11th of March why the relief prayed for by Long should not be granted; and .at the same time the judge granted a temporary restraining order similar to the one which he had granted in the first suit. This second suit was allotted to Judge Charles A. Holcombe, who is the other judge of the district court for the parish of East Baton Rouge. The filing of this second suit caused Gremillion to file another petition in this court for writs of certiorari, prohibition and mandamus, and for the same relief which Gremillion had asked for in the first suit. The court issued a writ of certiorari, and a rule on Judge Holcombe and Earl K. Long to show cause why the relief prayed for by Gremillion should not be granted.
 

 Judge Womack and Judge Holcombe have sent up the records in both suits, in response to the writs of certiorari.- Judge Holcombe, in his answer to the rule shows that he did not exercise jurisdiction or do anything whatever in the suit which was ' allotted to him. Judge Womack, in his answer to the rule, submits the matter for decision on the record. Earl K. Long, in - his answer to the rule, makes the same arguments, substantially, that were urged as his cause of action in his petitions in the suits in the district court.
 

 Opinion
 

 As a general rule this court will not exercise its supervisory jurisdiction over the other courts without first requiring the complainant to make his defense in the other court and exhaust his remedies there. But the court will relax this rule in cases where the exigencies demand it. See Dugas & Le Blanc v. Port Barre Timber & Tire Co., 144 La. 71, 80 So. 203, and Keiffe v. La Salle Realty Co., 163 La. 824, 112 So. 799, 53 A.L.R. 82. In this case it was necessary to act promptly. The date for the general election to be held throughout the state is fixed in the Constitution, Article 8, Section 9, as being on Tuesday next following the third Monday in April, every four years; and on this occasion the election day will fall on the 16th of April. The official ballots must be delivered to the many precincts throughout the state before the 6th of April, because of the 10 days allowed by law (Act No. 61 of Ex. Sess. of 1921) for absentee voting. The state printer, therefore, notified the Secretary of State, on the 4th of March, that it would be impossible to furnish the official ballots in time for the general election unless the printer received the necessary copy, bearing •the names of the nominees, not later than the 15th of March; which is only three days off.
 

 Our opinion is that the district court did not have jurisdiction over the suit
 

 
 *808
 
 of Earl K. Long, and that Long did not have a right or cause of action to contest the nomination of James A. Gremillion for the office of Secretary of State. According to Section 31 of Act 97 of 1922, any vacancy caused by death or otherwise, among the nominees selected by the political party in the primaries, shall be filled by the committee having authority over the calling and conducting of the primary. Accordingly, the State Central Committee had exclusive authority'to select a nominee to fill the vacancy caused by- the death of E. A. Conway. Having authority to select a nominee the committee had also the authority to rescind' the selection at any time before the name of the nominee was printed on the official ballot. There is no statute forbidding the committee to rescind a selection of a nominee and to substitute in his place the name of someone else; if for any reason, a majority of the members of the committee, in good faith, believe that it is for the interest of the’ political party that such a change should be made. If the executive committee of a political party; in rescinding the nomination of a party candidate and in nominating another candidate in his place, does not commit a fraud or violate any prohibitory law, the courts have- no authority to question the wisdom of the committee’s action; nor has the disappointed candidate any cause or right to complain. That is recognized in 20 C.J. §§ 157 and 158, pp. 136 and 137; and in 18 Am.Jur., paragraph 143, p. 273; and in the following decisions by this court: State ex rel. Rousseau v. Judge of the Second Judicial District Court, 13 La.Ann. 89; Collin v. Knob-lock, 25 La.Ann. 263; State ex rel. Burke v. Foster, Judge, 111 La. 939, 36 So. 32; Roussel v. Dornier, 130 La. 367, 57 So. 1007, 39 L.R.A.,N.S., 826; Reid v. Brunot, 153 La. 490, 96 So. 43.
 

 Long cites the case of People ex rel. Simpson v. Board of Police Commissioners of the City of New York, 10 Misc. 98, 31 N.Y.S. 112, 114, where a nominating convention, after making a nomination, reassembled and nominated another person for the same office, and it was held that the court should recognize the nomination first made. But the reason for the ruling in that case was that the political party did not repudiate the first nomination. Hence the court said:
 

 “Having made.one nomination, the party could not, while that [nomination] remained in force, make another. If it were otherwise, it might keep on until it had as many candidates as voters.”
 

 The difference between that case and this case is that in this case the State Central Committee that made the first nomination rescinded it.
 

 Having concluded that the old committee had the right to rescind the nomination and nominate James A. Gremillion in place of Earl K. Long, we find it unnecessary to decide whether the new committee, which also nominated Gremillion, would have had authority to rescind the nomination of Long if the old committee had not rescinded it.
 

 Long, in his answer to the rule which this court issued, pleads that Gremil
 
 *810
 
 lion was estopped from becoming a nominee because of his having been a candidate in the first primary, and also because of his having been a candidate for the nomination by the State Central Committee to fill the vacancy created by the death of Conway. No authority in law is cited for these pleas of estoppel; and we find no merit in them.
 

 Long, in his answer to the rule, cites Section 7 of Article 8 of the Constitution, requiring that all elections by persons acting in a representative capacity shall be viva voce. The record in this case does not show that the nomination of Gremillion was not viva voce. But that is a matter of no importance, because, after the nomination of Long was rescinded by the adoption of a resolution by the old committee, he had no interest in complaining and hence no right to complain of the manner of voting upon the nomination of Gremillion. These complaints, however, are disposed of by our deciding that the district court did not have jurisdiction to consider Long’s suit, under the facts of the case, which are set forth in his petition.
 

 Decree
 

 The rule to show cause and the alternative writs of prohibition and mandamus issued by this court in these proceedings are now made peremptory; and, accordingly, the temporary restraining order granted by Judge James D. Womack on the 2nd day of March, 1940, in the suit entitled Earl K. Long v. Wade O. Martin, Chairman of the Democratic State Central Committee, et al., No. 15,122 of the docket of the 19th Judicial District Court, for the Parish of East Baton Rouge, is annulled and set aside; and the suit itself is ordered dismissed and the demands of the plaintiff in the suit rejected at his-cost.