Acting under the authority of Section 48 of Act No. 224 of 1940, the Democratic State Central Committee (hereinafter referred to as the Committee) met on March 14, 1944, and by resolution, nominated ten Democratic Presidential Electors to be voted on at the general election to be held throughout the State on November 7, 1944. Among these ten nominees were the present three plaintiffs in this suit, E. Wayles Browne, Bronier Thibaut and George Billeaud. The names of these ten Democratic nominees were duly certified by the Committee to the Secretary of State.
At a subsequent meeting of the Committee held on September 26, 1944, following a general primary election held throughout the State, after adopting the usual resolution certifying the nominees who had been nominated in the said primary election, the Committee then adopted another resolution which had the effect of suspending its action taken on March 14, 1944, relative to the nomination of Presidential Electors and which resolution instructed the Secretary of State to disregard the former resolution until further instructions of the Committee.
The Committee met again on October 7, 1944, and passed another resolution in which it rescinded its action in the nomination of the three plaintiffs as three of the ten Democratic Presidential Electors and substituted in their names three other nominees, naming another complete list of ten Presidential Electors to be voted on at the general Election on November 7, 1944. The plaintiffs in this suit, at the time the three other nominees were substituted in their place by the Committee, had not resigned nor withdrawn by a request in writing in accordance with Section 57 of Act 224 of 1940. The new list of Presidential Electors on which the names of the three plaintiffs had been substituted by three other nominees was duly certified to the Secretary of State, and the names appearing on the said list were ordered to be printed on the official ballot as the Democratic nominees for Presidential Electors.
This suit was directed against the Secretary of State in the form of a mandamus proceeding, ordering him to show cause why he should not be commanded to print the names of the plaintiffs on the official ballot as nominees of the Democratic Party for Presidential Electors. In answer to the rule, the Secretary of State filed an exception of no right and no cause of action; the exception of no right of action was sustained, and plaintiffs' suit dismissed. From this judgment the plaintiffs have appealed.
Numerous contentions are advanced by counsel for plaintiffs which involve the application of various statutes concerning the duties of the Secretary of State with regard to the printing and distribution of ballots; statutes, which, in our opinion, appear to be somewhat confusing and some being hard to reconcile with others. We have come to the conclusion however that the two issues involved in this suit do not require us to endeavor to reconcile all of this apparent conflict. These are: first, whether or not the Committee had a right to rescind and annul its action of March 14, 1944, by its subsequent action of October 7, 1944, by substituting three other Democratic nominees for Presidential Electors in the place of these three plaintiffs; second, whether or not the failure of the Committee to file the list of nominees appointed on October 7, 1944, prior to the fifth Tuesday before the General Election, which in this case was Tuesday, October 3, 1944, had the effect of rendering this last list illegal under the provisions of Sec. 54 of Act 224 of 1940.
It strikes us, at the outset, that the first issue presented is the same as came before the Supreme Court in the case of Long v. Martin et al., 194 La. 797, 194 So. 896, 899. The decision in that case is decisive of the issue in this case and we are controlled by the principle announced therein.
Under the primary law of 1922, Section 31 of Act 97, the State Central Committee was vested with the authority to nominate a candidate where a vacancy occurred after the primary election. A vacancy occurred in the nomination of a candidate for Secretary of State by reason of the death of the regular nominee, E.A. Conway. Acting under the authority given it by the said primary law, the Democratic State Central Committee nominated Earl K. Long as the Democratic candidate for said office, and duly certified his name as such. Subsequently, the Committee met and rescinded its action in the nomination of Long and substituted in his place as nominee the name of James A. Gremillion. One of the questions presented in the cited case was whether or not the Committee had a right to rescind *Page 423 
its former designation of a nominee and substitute another in his place. In passing on the power of the Committee to do so the Supreme Court had this to say: "Having authority to select a nominee the committee had also the authority to rescind the selection at any time before the name of the nominee was printed on the official ballot. There is no statute forbidding the committee to rescind a selection of a nominee and to substitute in his place the name of someone else, if for any reason, a majority of the members of the committee, in good faith, believe that it is for the interest of the political party that such a change should be made. If the executive committee of a political party, in rescinding the nomination of a party candidate and in nominating another candidate in his place, does not commit a fraud or violate any prohibitory law, the courts have no authority to question the wisdom of the committee's action; nor has the disappointed candidate any cause or right to complain." The Court cited authority in support of its holding.
It is conceded by counsel for plaintiffs in this case that, under Act 224 of 1940, the General Election Law, the Committee had authority to choose and nominate the ten Democratic Candidates for Presidential Electors. In our opinion, the power given the Committee to nominate candidates for Presidential Electors is of the same nature as that given the Committee to fill vacancies in nominations under the Primary Law of 1922, supra. Therefore, if, as the Supreme Court held in the cited case, the Committee had authority to rescind its action in appointing a candidate to fill a vacancy under the Primary Election Law, we can see no reason why it should not have the same power and authority to rescind its action in appointing candidates for Presidential Electors and substitute new nominees regardless of whether or not the original nominees have resigned or withdrawn. At the time the new list of nominees was filed in the office of the Secretary of State, the ballots had not been printed and distributed. Clearly, therefore, under the ruling of the Supreme Court, in the cited case, we are not in a position to hold that the Committee did not have authority to rescind its former nominations and place others in lieu of these plaintiffs.
Considerable comment is made by learned counsel for plaintiffs in criticism of the Committee in the methods used in an attempt to commit the original nominees on certain policies, inferring that some of its actions were arbitrary. We are not concerned with any of the motives which may have prompted the action of the Committee or the policy which it pursued. We are only concerned with the legality of its action.
On the second issue, it is obvious that, if, as we have held above, the action of the Committee on October 7, 1944, had the effect of ousting the plaintiffs as nominees of the Democratic Party for Presidential Electors, they have no interest in raising the question of the failure of the Committee to file the new certification of nominations with the Secretary of State within the time prescribed by Section 54 of Act 224 of 1940, nor could their interest be affected thereby.
The exception of no right of action was properly sustained by the Judge of the lower Court and for the reasons herein stated the judgment which dismissed the plaintiffs' suit is hereby affirmed at their costs. *Page 461