266 So.2d 199

William H. BAKER

v.

DEMOCRATIC STATE CENTRAL COM-
MITTEE OF LOUISIANA et al.

No. 52759.

Aug. 16, 1972.  Decree.

Aug. 23, 1972.  Opinion.

Thomas W. McFerrin, Baton Rouge, Camille F. Gravel, Jr., Alexandria, Arthur C. Watson, Watson & Murchison, Natchitoches, Blake G. Arata, New Orleans, William E. Logan, Lafayette, R. Harmon Drew, Minden, James G. Boyer, Lake Charles, Vincent J. Sotile, Donaldsonville, Stephen P. Dart, St. Francisville, Paul Henry Kidd, Monroe, Edwin O. Ware, Alexandria, Captain Jack Wyly, Lake Providence, for relator.

Holloway, Baker, Culpepper, Brunson & Cooper, William H. Baker, Jonesboro, for appellee.

### DECREE.

HAMLIN, Justice:

In view of the great public interest in this matter and giving particular consideration to the exigencies of the matter as relates to time, we herewith hand down our decision—the reasons for which will follow in due course.

The writ of certiorari herein prayed for by applicant, Democratic State Central Comittee of Louisiana, is granted.

It is ordered that the Honorable Wade O. Martin, Jr., Secretary of State of the State of Louisiana, is hereby ordered to tabulate and compute, promulgate and certify the returns of the Democratic Primary Election for United States Senator which will be held on August 19, 1972; that the candidate receiving the largest number of votes in said primary election shall be certified by him as the nominee of the Democratic Party of the State of Louisiana for the office of United States Senator from the State of Louisiana to be voted upon in the General Election to be held on November 7, 1972; accordingly, the demands of plaintiff, William H. Baker, are rejected and his suit dismissed at his cost.

## OPINION.

HAMLIN, Justice:

Involved herein is the legality vel non of the resolution passed by the Democratic State Central Committee of Louisiana on August 7, 1972:

## "RESOLUTION

"Whereas, the Honorable Allen J. Ellender, United States Senator from Louisiana, had a long and distinguished career of devoted service to this State and Nation; and

"Whereas, Senator Ellender has departed this life to the regret of each member of this Committee and to the loss of Louisiana and the United States; and

"Whereas, since his death some question has arisen as to whether the Democratic primary called for August 19, 1972 to select a nominee of the Democratic party for the office of United States Senator, should be called off or postponed; and

"Whereas, it is the sense of this Committee that, under the existing circumstances, it is neither desirable nor legally permissible to cancel, call off, or postpone the primary election, now set for August 19, 1972;

"NOW THEREFORE BE IT RESOLVED by the Democratic State Central Committee of Louisiana;

"(1) That the primary election scheduled to be held on August 19, 1972 to select a nominee of the Democratic party for the office of United States Senator, be held as originally called by this Committee on June 9, 1972;

"(2) That the qualifying for the primary election shall not be reopened, and that the August 19, 1972 primary election shall be held between the two remaining Democrats who have legally qualified for this office;

"(3) That the ballots originally printed shall be used for the August 19, 1972 primary election and should any votes be cast for the deceased, this Committee hereby directs all commissioners and other officials having duties relating to such election that such votes not be counted or tabulated for any purpose."

By decree rendered in this case on August 16, 1972, we granted the writ of certiorari herein prayed for by applicant, Democratic State Central Committee of Louisiana, and ordered that the Honorable Wade O. Martin, Jr., Secretary of State of the State of Louisiana, tabulate and compute, promulgate and certify the returns of the Democratic Primary Election for United States Senator held on August 19, 1972. We further ordered that the candidate receiving the largest number of votes in said primary election shall be certified by the

said Honorable Wade O. Martin, Jr. as the nominee of the Democratic Party of the State of Louisiana for the office of United States Senator from the State of Louisiana to be voted upon in the General Election to be held on November 7, 1972; we also rejected the demands of plaintiff, William H. Baker, and dismissed his suit at his cost.

Because of the great public interest in this matter and giving particular consideration to the exigencies thereof as relates to time, we handed down our decision, with these reasons to follow.

This litigation commenced on August 8, 1972, when William H. Baker, a resident of Jackson Parish, Louisiana, claiming to be a registered Democratic voter and taxpayer of Jackson Parish, filed a petition for mandamus in the Nineteenth Judicial District Court for the Parish of East Baton Rouge. The defendants in said petition are the Democratic State Central Committee of Louisiana, Honorable Wade O. Martin, Jr., J. Bennett Johnston, Jr., a resident of the Parish of Caddo, and Frank Allen, a resident of the Parish of Ouachita.

Mr. Baker alleged that Mr. Johnston and Mr. Allen, along with the late Honorable Allen J. Ellender, qualified for the position of United States Senator with the Democratic State Central Committee of Louisiana to run in the August 19, 1972 Democratic primary; that after the closing of the qualifying date, Honorable Allen J. Ellender, the incumbent Senator, passed away on July 27, 1972, his death occurring within thirty days of the primary election.

Mr. Baker further alleged that under the express provisions of LSA R.S. 18:361(D) [1]

1. "§ 361. *Lack of or unopposed candidates; death of candidate*

"A. After the date has passed on which candidates are allowed to enter and file their notification in any primary under this Part, if there is but one candidate for any particular office for which the primary has been called, the respective committee ordering the primary shall be immediately convened, and the person thus unopposed shall be *declared to be the* nominee of the party, without the necessity of holding a primary for that office.

"B. In like manner, when a candidate for membership on a party committee provided for in this Part is unopposed, he shall be declared elected without the necessity of having his name printed on the ballot and of being voted for.

"C. After the date has passed on which candidates are allowed to enter and file their notification in any primary under this Part, if one or more of the rival candidates for any particular office dies, new candidates for that office may enter and file their notification for a period of five days after the death. However, the provisions of this Sub-section do not apply when the death occurs within thirty days of the day fixed for the primary.

"D. Where there is one or more candidates or nominees of a political party, for the same office, and any of such candidates or nominees die within thirty days of the day fixed for the first primary election, or on the day of the first primary election, or dies at any time between the day fixed for the first primary election and the day fixed for the general election, or on the day of the general election, and there is not time to print the name of a new *candidate or nominee on the ballot*

the Democratic State Central Committee has an administrative and mandatory duty to call and hold another primary election in the manner and within the time as provided in LSA R.S. 18:305 [2] to nominate candidates for the office of United States Senator in the special election called as provided by LSA R.S. 18:631.[3]

(which fact shall be certified by the secretary of state and the chairman of the committee which called the primary), and there remains any nominee of any political party, or any other candidate for the same office, all votes cast for all remaining candidates or nominees shall be null and void and shall not be counted except as hereinafter otherwise provided in this Sub-section. Then the respective committees having authority to call primary elections shall call and hold another primary election in the manner and within the time as provided in R.S. 18:305 to nominate candidates for the office in a special election, called as provided by R.S. 18:631, as amended; provided, that where more than one nominee for any office is authorized by law, such special election shall be confined to filling the vacancy or vacancies in the nomination occasioned by the death and shall not affect any surviving candidate who has been nominated, and provided further that in any case in which no candidate received a majority of the votes for any office in the first primary and one of the two candidates receiving the highest number of votes in the first primary dies, withdraws or otherwise is disqualified prior to the date fixed by law for the holding of the second primary, the other candidate who received the highest number of votes for the office shall be declared the nominee of the party and no second primary shall be held."

2. "§ 305. *Special elections; call for primary; date; second primary*

"A. Whenever a special election is held to fill a vacancy for an unexpired term caused by death, resignation, or otherwise of an officer, the respective committees having authority to call primary elections to nominate candidates for the office may fix the date at which a primary shall be held to nominate candidates in the special election, which date shall not be less than ten days after the issuance of the order for the special election. The committee calling the election may fix the last day and hour on which the candidates shall qualify, the date and hour within which list of proposed commissioners shall be filed, the date and hour at which the committee shall meet and draw the commissioners, the date and hour at which the committee shall meet to declare the results and fix the date for a second primary, if necessary.

"B. This committee may do the things above set forth without reference to provisions in this Part referring to other primary elections. However, in fixing the dates and hours the committee shall grant as much time for the performance of the acts required as is reasonably practicable."

3. "§ 631. *Vacancy in nomination; procedure; death of candidate*

"Any vacancy occurring in the nomination made by a political party shall be filled as provided for by Chapter 2, Part 1 of this Title. Any vacancy among the list of candidates for the office of presidential elector nominated by a convention shall be filled in the manner provided for by the convention or by the state central committee.

"Provided that, where there is one or more candidates or nominees of a political party, for the same office and any such candidates or nominees dies within thirty days of the day fixed for the primary, or on the day of the primary, or dies at any time between the day fixed for the primary and the day fixed for the general election, and there is not time to print the name of a new candidate or nominee on the ballot (which fact shall be certified by the secretary of state to the authority which called the general election), and there remains any nominee of any politi-

He further alleged that the Democratic State Central Committee was advised of its

cal party, or any other candidate for the same office, all votes cast for all remaining candidates or nominees shall be null and void and shall not be counted, except as otherwise hereinafter provided in this Section. In such event, the respective officers having authority to call general elections shall call a special election to elect a candidate for the office which shall be held on a date to be fixed and otherwise in accordance with the provisions of this Part for general elections, at which special election the person chosen to fill the vacancy due to any death and the remaining candidates or nominees shall be voted upon; provided that where the election of more than one candidate to the same office is authorized by law, such special election shall be confined to filling the vacancy or vacancies occasioned by the death of one or more candidates and shall not affect any surviving candidate who has been elected."

[End of Footnote 3]

4.                    "July 29, 1972
"Honorable Arthur C. Watson
"Chairman, Democratic State
   Central Committee
"P. O. Box 226
"Natchitoches, Louisiana 71457
"Dear Mr. Watson:

"You have requested an opinion as to whether the State Central Committee should call a special primary election as a result of the death of United States Senator Allen J. Ellender in order to allow additional time for persons to qualify for the office.

"The State Primary Election Law, R.S. 1950 Title 18, Chapter 2, Section 361 reads as follows:

" *  *  *  [See Footnote 1]

"As we interpret this Act and in particular Section D. thereof, it is our opinion that the law provides that where there is one or more candidates for the same office in a primary election and any of such candidates dies within 30 days of the date fixed for the primary election

mandatory duty by William J. Guste, Attorney General of the State of Louisiana,[4]

(August 19) and the Secretary of State and the party certify that there is not time to print the name of the new candidate or candidates on the ballot and there remains any other candidate for the same office, all votes cast for all remaining candidates shall be null and void and shall not be counted. The Committee having authority to call primary elections shall hold another primary election in the manner provided in R.S. 18:305.

"The Secretary of State with your concurrence has certified that

" 'there is not sufficient time to print the name of a new candidate on the ballot to be voted on August 19.'

"Accordingly, it is our opinion that the Democratic State Central Committee is required by law to call and hold another primary election.

"This opinion is consistent with opinions rendered by the office of the Attorney General on February 4, 1952, (Report & Opinions of Attorney General, 1950–1952, p. 48) and April 18, 1966.

"These opinions are supported by the Supreme Court decision in the case of Porter vs. Conway [181 La. 487] 159 So. 725, wherein the court recognized that the whole spirit of legislation relating to elections is to encourage the multiplicity of worthy candidates for nomination to public office in order that the voters constituting a political party may have the benefit of a choice.

"The philosophy of the holding in the Porter case was that it would be unfair and against public policy to prevent persons desiring to qualify for office to do so where a candidate for office has died after the time for qualifying has closed and when it is too late to print the ballots. Furthermore, it would be unfair and against public policy to deprive the public of the opportunity to select candidates based on the actual conditions that exist at the time of the election.

"Hence, the legislature enacted R.S. 18:361(d) to provide for the resetting of

and that the Democratic State Central Committee met in Baton Rouge, Louisiana, on August 7, 1972, but failed, neglected and refused to follow the mandates of LSA R.S. 18:361(D) and arbitrarily and capriciously failed to call and hold another primary election as required by law and failed and refused to allow other candidates to qualify for the position of United States Senator.

Mr. Baker prayed that the Democratic State Central Committee and Honorable Wade O. Martin, Jr., Secretary of State of the State of Louisiana, be ordered to call another primary election or show cause at a date and hour to be set why they should not be required to do so. Service of process was made upon all four defendants.

The District Court on August 8, 1972 ordered the Democratic State Central Committee and Honorable Wade O. Martin, Jr. to show cause on August 17, 1972 why they should not be ordered to call another primary election.

On August 14, 1972, the Democratic State Central Committee of Louisiana filed in this Court an application for writs of certiorari, prohibition and mandamus under its supervisory powers. It alleged that on August 7, 1972, the Democratic State Central Committee of Louisiana convened and by a vote of 93–22 determined that LSA R.S. 18:361(D) did not require or permit a period to allow new candidates to qualify, nor did it require or permit the scheduling of a new Democratic primary for the United States Senate seat; that the Democratic State Central Committee further determined that the Democratic primary for the Senate seat would proceed as scheduled on August 19, 1972 with the remaining candidates, Frank Allen and J. Bennett Johnston, Jr.

The application further alleged that on August 10, 1972, Honorable William J. Guste, Attorney General of Louisiana, upon request of Honorable Wade O. Martin, Jr., issued an advisory opinion to the Secretary of State concerning said primary election, in which he stated: "it is our

the primary election, and the reopening of the period in which candidates for the office may qualify where death occurs within in 30 days prior to the date of a primary election.

"Any other interpretation of Title 18, Section 361 would preclude the possibility of additional candidates qualifying for the office of United States Senator.

"It is our opinion that it was the intention of the legislature in adopting Title 18, Section 361(d) to provide for the precise situation which has occurred as

a result of the death of Senator Allen J. Ellender.

"The election shall be held as provided in Title 18, Section 305 A. as follows:
" * * *   [See Footnote 2]
"If I can be of further service to you, please do not hesitate to call on me.
"With kindest regards, I am
    "Sincerely,
        "[sgd.] William J. Guste, Jr.
        "WILLIAM J. GUSTE, JR.
        "Attorney General"

opinion that, absent a court order, you should tabulate and compile but refrain from promulgating or certifying any such returns." [5]

5.             "August 10, 1972

"Honorable Wade O. Martin, Jr.
"Secretary of State
"P. O. Box 44125, State Capitol
"Baton Rouge, Louisiana 70804

"Dear Mr. Martin:

"This replies to your letter of August 7, 1972, requesting an opinion as to whether you should promulgate the election returns in the primary election on August 19, 1972, with respect to the election for United States Senate.

"In view of the fact that any returns in the primary election for United States Senate 'which would be cast on August 19, 1972 are null and void (R.S. 18:361; Reports and Opinions of the Attorney General, 1950–52, p. 48; Attorney General's Opinion, 7/29/72 to Arthur C. Watson; Porter v. Conway, [181 La. 487] 159 So. 725), *it is our opinion that, absent a court order, you should tabulate and compile but refrain from promulgating or certifying any such returns.*

"We refer you to our opinion of July 29, 1972, addressed to Honorable Arthur C. Watson, Chairman, Democratic State Central Committee (copy attached). In that opinion we advised the State Central Committee that the law (R.S. 18:361) specifically provides that where a candidate for United States Senate dies within thirty days of the day fixed for the primary election,

"   '    .    .    .    all votes cast for all remaining *candidates*    .    .    .    *shall be null and void and shall not be counted*    .    .    .    '

"It further provides that the State Central Committee

"   'shall call and hold another primary election    .    .    .    '

"The date of this call is dependent on the date fixed by the Governor for a special

The Democratic State Central Committee further alleged that a determination by a lower court on August 17, 1972, or immediately thereafter, gives inadequate time

general election for United States Senate. (R.S. 18:631 and R.S. 18:545).

"The law is clear that the above is mandatory. R.S. 18:284 provides that,

"   'All primary elections held by political parties *shall* be conducted and held under and in compliance with, the provisions of this part.'

"R.S. 18:294 further provides that the State Central Committee may make rules and regulations which are

"   'Not inconsistent with the constitution and laws of the state    .    .    .    '

"Furthermore, the courts have consistently held that party committees must follow the Primary Election Law.   Laseigne [Lasseigne] v. Martin, [250 La. 1073] 202 So.2d 250, Jordan v. The Twenty-Sixth Senatorial District Democratic Executive Committee, [La.App.] 202 So.2d 681, writ refused [251 La. 65] 203 So.2d 86, State [ex rel. Millet v. Democratic Parish Executive Committee, [138 La. 562] 70 So. 514.

"In Laseigne v. Martin, the court stated:
"   'Where standards or norms are set up by the legislature for the guidance of political parties in the conduct of those aspects of the elective process and trusted to them by law, such regulations are to be followed literally.'

"Absent a court order, it is our further opinion that no 'special' instruction to the precinct commissioners is required, nor should there be any deviation from the provisions of R.S. 18:354.

"If we can be of further service to you, please do not hesitate to call upon us.
"With kindest regards, I am

"Sincerely,
"[sgd.] William J. Guste, Jr.
"WILLIAM J. GUSTE, JR.
"Attorney General

for normal appellate procedural remedies because time is of the essence and a prompt determination is absolutely essential for the protection of the rights of all parties; it maintains that its decision of August 7, 1972 is both legal and proper and without immediate intervention by this court under its supervisory jurisdiction, orderly and timely resolution of the questions is otherwise impossible; that without immediate action of this court, the August 19, 1972 primary will be conducted under a cloud of legal uncertainty. It alleges: *"Indeed, Petitioner avers and verily believes that the effect of the August 10, 1972 opinion of the Attorney General is to enjoin the Secretary of State from performing his ministerial duties under the laws of this State in certifying the returns of the primary election and thus to usurp the judicial powers of the courts of this state."* (Emphasis ours)

We now pass to a discussion of the points urged by applicant in its brief.

## EXERCISE OF THIS COURT'S JURIS-DICTION BEFORE JUDGMENT IN THE LOWER COURT

This court has in the past used its plenary powers in this fashion a number of times. Long v. Martin, 194 La. 797, 194 So. 896 (1940); State ex rel. Le Blanc v. Democratic State Central Comm., 229 La. 556, 86 So.2d 192 (1956); State ex rel. Pearce v. Democratic State Central Committee, 229 La. 555, 86 So.2d 191 (1956); State ex rel. Rosenstock v. Democratic Municipal Exec. Comm. of Town of Westwego, 197 La. 469, 1 So.2d 697, 699 (1941); and more recently, Seegers et al. v. Parker et al., 256 La. 1039, 241 So.2d 213 (1970).

■ We are of the view that not only would failure to consider this matter under the application render the Committee unable to perform its duty under the law, but it would also leave hundreds of thousands of Louisiana Democrats uncertain, as they enter the polling booths across the State on August 19, 1972, whether their votes will even be tallied or promulgated. We feel that the exigencies of this case demand our exercising our supervisory jurisdiction.

## DISMISSAL OF PETITION FOR MANDAMUS FOR LACK OF JURISDICTION

Applicant urges the dismissal of this matter for lack of jurisdiction because it involves political questions not properly the subject for judicial intervention, relying on Reid v. Brunot, 153 La. 490, 96 So. 43 (1923).

■ We do not choose to dismiss the suit on this ground even though William H. Baker does not allege that he is, or intends to be, a candidate; he has alleged that he is a citizen and taxpayer, and we prefer to meet the issues and decide the case on its merits.

## THE LEGALITY OF THE ACTION OF THE COMMITTEE ON AUGUST 7, 1972

We must observe that the primary election had not been held and there was no nominee—no candidate of a political party at the time of Senator Ellender's death. As far as the Democratic primary of August 19, 1972 is concerned, the parties had offered themselves for the purpose of becoming the *nominee* or *candidate* of the Democratic Party—the party which called the primary.

■ It is our view that Louisiana election statutes only permit the re-opening of qualifications and the calling of a special primary election when a political party is deprived by the death of its nominee (or its candidate who has not yet formally been declared to be the party's nominee) and there does not remain sufficient time to have the name of its replacement nominee placed on the ballot before the election.

Section 361(D) provides in relevant part as follows:

"Where there is one or more *candidates or nominees of a political party* * * * and there is not time to print *the name of a new candidate or nominee* on the ballot * * * *such special election shall be confined to filling the vacancy or vacancies in the nomination* occasioned by the death * * *." (Emphasis ours) Related Section 631 provides

in relevant part as follows: "(W)here there is one or more *candidates or nominees of a political party* * * * *and there remains any nominee* * * *." (Emphasis ours)

The statutes are quoted in full, supra, in footnotes 1 and 3.

After setting forth the background, legislative history and purpose in a lengthy argument not feasible to set forth herein, applicant's brief urges:

"*The language of the statute.*

"It may be asked why, if the statutory purpose is to deal with the death of a nominee, does the statutory language of Act 280 (and thus of Section 361D and 631) contain references to 'candidates'? The answer to that question is relatively simple. The act speaks of 'candidates or nominees *of* a political party', rather than 'candidates *for* any particular office', which language is found in those portions of Section 361 *not* amended by Act 280. A candidate of a political party is the *party's* candidate who, for one reason or another, has not yet been declared the nominee of the party by the appropriate party committee. For instance, the winner of a primary election is clearly the candidate *of* the party following his selection in the primary, even though he has not yet been declared the nominee by his party committee. Similarly, if only one candidate *for* an office

qualifies, he is clearly the candidate of the party from the time the qualification period ends until the date on which he is declared by his party committee to be the party's nominee in accordance with Section 361A. Similar situations where there can be a candidate of a party who has not yet been formally declared to be the party's nominee occur in the event of the withdrawal or disqualification of one of two candidates, or in the case of a contested election. Hence, the inclusion of the term 'candidates' in Act 280 is consistent with its purpose to protect a party from having its nominee (or candidate not yet declared to be its nominee) die without the opportunity to place the name of a replacement nominee on the ballot. The statute is thus an 'insurance policy' for the party, should the 'insurable risk' of the death of its nominee (or its candidate not yet officially its nominee) occur.

"Moreover, the statutory language of the act any [sic] only be reconciled with an interpretation of the act that limits its applicability to the death of a party's nominee or candidate not yet formally declared to be its nominee. Section 361D provides that, in the event the statutory pre-requisites are met, then the respective party committees shall call a special *primary* election to fill the '*vacancy* due to any death' is to be voted upon (Emphasis supplied). If a party has not selected its candidate or nominee and the death of a candidate for office occurs, there is no 'vacancy due to any death' to be filled because any vacancy in the nomination is not due to death of a candidate but because the primary election has not yet occurred. The statutory language regarding a 'vacancy' only makes sense if it is applied to the situation in which a party's nominee dies, leaving a vacancy in the party's nomination. (See also Section 361D, which states that the special election therein authorized 'shall be confined to filling *the vacancy or vacancies in the nomination* caused by death . . .") (Emphasis supplied).

"In addition, Section 361D requires that the '*respective committees* having authority to call primary elections' call special primary elections. The statute does not tell the committee of the party in question to call another primary. It commands the committees of *all* parties to act. This provision only makes sense where a party is deprived of its candidate or nominee and there is not sufficient time to place the name of its replacement nominee on the ballot. Any other interpretation requires the holding of both a special general election and special primary elections by *all* political parties, even though there is a death of only *one* of many candidates for one

party's nomination for a particular office.

"Moreover, Section 361D states that the section is applicable only when there is not sufficient time to print 'the name of *a* new candidate or nominee' on the ballot. (Emphasis supplied). If Section 361D were intended to apply when *any* candidate for office died and to allow *all* persons interested in running to qualify, clearly the statute would have required the calling of a special primary election if there was not sufficient time to print the names of *all* new candidates on the ballot. Hence, it is clear that Section 361D is not applicable to the situation that confronts this committee, since neither the party's nominee, nor the party's candidate who has not yet formally been declared the party's nominee, has died."

We agree.[6]

Porter v. Conway, 181 La. 487, 159 So. 725, decided in 1934, 38 years ago, is not applicable. It stands for naught today. The case was never finally decided; only writs were granted and the matter was afterwards dismissed by plaintiff.

We conclude that applicant was correct when it adopted its resolution, supra.

For the reasons assigned and for convenience, we repeat herewith the decree handed down by us on August 16, 1972.

"The writ of certiorari herein prayed for by applicant, Democratic State Central Committee of Louisiana, is granted.

"IT IS ORDERED that the Honorable Wade O. Martin, Jr., Secretary of State of the State of Louisiana, is hereby ordered to tabulate and compute, promulgate and certify the returns of the Democratic Primary Election for United States Senator which will be held on August 19, 1972; that the candidate receiving the largest number of votes in said primary election shall be certified by him as the nominee of the Democratic Party of the State of Louisiana for the office of United States Senator from the State of Louisiana to be voted upon in the General Election to be held on November 7, 1972; accordingly, the de-

---

6. *Footnote by author:*

If the interpretation of the Attorney General is accepted and another primary ordered, the qualifications of candidates ordered re-opened, and, after they are closed, another death should occur, this incongruous situation could go on forever —ad infinitum—with the resultant unnecessary cost to the State of an expenditure of over $300,000.00 of public funds (considering the cost of printing and distributing ballots, the delivering and installation of voting machines in all precincts of the State, the cost of paying commissioners at the polls and the expense of stationery for tally sheets, etc.) when there is another remedy open to a candidate: that of qualifying as an independent candidate in the General Election to be held November 7, 1972, thus also giving the voters the benefit of a choice of candidates.

Reason dictates and justice demands that this court should act to prevent such occurrences.

mands of plaintiff, William H. Baker, are rejected and his suit dismissed at his cost."

SUMMERS, J., dissents and assigns reasons.

BARHAM, J., concurs for additional reasons which will not be assigned in writing. I agree with the dissenters that the legislature should clearly express its will in regard to this problem. The ambiguity, incongruity, and even incredulousness in the law are the basis for the majority opinion.

McCALEB, Chief Justice (concurring specially):

I fully subscribe to the views expounded in the main opinion. It seems to me that to construe the statute in any context other than the majority view leads to a manifest absurd consequence (an interpretation to be avoided by the Courts) which would require a second primary whenever any one of multiple candidates for the same office should die within thirty days of the day fixed for the primary election. Such a costly and inconvenient procedure was never contemplated by the legislature, in my opinion.

Moreover, albeit we have refrained from dismissing his suit on this basis, it is clear that Mr. Baker, as an elector and taxpayer, has no legal interest or standing to enforce the action he has filed herein. The ruling of the Committee has not adversely affected him in any way—for he neither seeks to become a candidate of the Democratic party for nomination as United States Senator, nor has he been deprived of his right of suffrage to vote in the election.

TATE, Justice (dissenting).

I respectfully dissent.

My brethern of the majority find the pertinent statutory provision ambiguous. This being so, they properly do not disturb the political judgment of the political election committee regulating a party election, since they find no clearly applicable statutory provision to the contrary of the committee's determination.

Nevertheless, under equally well settled principles, the dissenting justices cannot ignore, as beyond judicial review, action of a party election committee which is clearly illegal and which is contrary to express law, in the opinion of the dissenting judges.

Just as did the Attorney General in an opinion followed by the Secretary of State, the dissenting judges find that La.R.S. 18:361, subd. D, as last amended by Act 535 of 1968, unambiguously requires either the reopening of the qualifications or the scheduling of a new primary election, when one of two or more candidates dies within thirty days of the day fixed for the first primary election. Omitting provisions not applicable to the present situation, the statute provides:

"Where there is one or more candidates . . . for the same office, and any of such candidates . . . die within thirty days of the day fixed for the first primary election, . . . and there is not time to print the name of a new candidate . . . on the ballot . . ., and there remains . . . any other candidate for the same office, all votes cast for the remaining candidates . . . shall be null and void and shall not be counted except as . . . provided [as follows:] the respective committees having authority to call primary elections shall call and hold *another* primary election * * *." [1]

Thus, as the dissenting judges read La. R.S. 18:361, subd. *D* as presently in effect, the primary election scheduled for August 19th shall be held as scheduled, but all votes cast for the nomination for the office of United States Senator *"shall* be null and void and shall *not* be counted" except when cast in another primary election called for that purpose. All votes cast for all *other* state, district, and local offices shall be counted and shall determine the nominations for such *other* offices. The additional primary election for the office of United States Senator could easily be scheduled, without additional expense, for the second primary elections presently scheduled for these other offices. A second primary election for Senator (only) could then be scheduled between that date and the general election, if indeed none of the candidates who qualify for the first senatorial primary do not receive a majority of the votes cast.

Prior to the 1960 amendment of La.R.S. 18:361, the statutory provision *did* provide that nominations would *not* be reopened, except where a candidate died *more* than thirty days before the day fixed for the primary. This, in effect, is the meaning of the present subsection 361, subd. *C*.

The 1960 and subsequent amendments, which our majority now ignores, were specifically intended by the legislature to regulate the present situation: Where a candidate dies within thirty days before the first primary and where the Secretary of State certifies there is not time to print the name of a new candidate on the ballot. The obvious purpose of the 1960 and subsequent amendments by the legislature was

1. The statutory history of the section, which appears in Chapter 2 *"Primary Elections"* of Title 18 "Elections", clearly indicate that the "candidates" referred to are those who qualified as candidates in the primary election for the nomination. See La.R.S. 18:361 (1950) ; its amendment by Act 44 of 1952; its amendment by Act 280 of 1960 (which for the first time also applied in certain circumstances to the distinguishable situation where there is one or more "nominees of a political party, for the same office") ; and as amended by Act 535 of 1968. Act 280 of 1960 also amended La.R.S. 18:631 providing for equivalent procedures when there is a death of one of two or more *nominees* (i. e. selected for a party, usually after the primary election process).

to permit the people a chance to have a real choice, when they may have been deprived of it by the death of the only candidate for the party nomination representing their point of view within thirty days of the first primary.

We may think the legislation is unwise or even foolish. We may be distressed by the thought that a first primary election for an office may be postponed by the death of a minor candidate whose living could not have affected the outcome. Or, to the contrary, we might not be adverse to a policy which lets the nomination go by default to the survivor if one of two strong candidates who qualify dies just before the election.

Nevertheless, whatever our personal views, the legislature has expressly mandated in mandatory terms that under the present situation, "Where there is one or more candidates" and "*any* of such candidates" die within thirty days of the first primary date, "all votes cast for all remaining candidates . . . shall be null and void" except in a special primary election called for that purpose. It is not our function as a court to strike out mandatory election legislation as meaningless because we disagree with it.

I may add that, by the majority's ignoring the plain intent and provisions of Subsection D of La.R.S. 18:361, this enactment is reduced to a meaningless jumble of words. It exists now as a time-bomb available to disrupt future elections should any candidate die within thirty days of the first primary date. The legislature had best confirm this judicial repeal of it by a legislative repeal; or, if the legislature prefers to reinstate the there-expressed legislative policy of insuring the voter a wider choice, by re-opening the candidate list when his candidate dies, it must do so by re-enacting said statute in even more explicit terms, if such be possible.

DIXON, Justice (dissenting).

I respectfully dissent from the conclusion of the majority.

No one suggests that the statutes involved (R.S. 18:361 and 631) do not say, in rather plain and unmistakable language, that a new election shall be held when a candidate dies within thirty days of the date of the first primary. Rather, all the effort and explanation, to this point, has been: (1) to avoid the effect of the statutes in favor of "wiser" and more expedient alternatives; (2) to discover "ambiguities" in the statutes which might arise in some conditions not before us, to excuse a departure from the plain words of the law.

This is not the judicial function.

The Democratic Committee, the applicant for writs, takes the position that "this is a political controversy into which this Court should not enter." Nevertheless,

when we affirm the actions of the Committee, our decision is no less political than that of the Committee itself.

Not even the candidate J. Bennett Johnston, who has the most to gain and the most to lose by the decision of this court, urges the action taken by the majority. In his answer filed in this case, much to his credit, he merely takes the position that he is a candidate for the United States Senate in the August 19th primary, or any other primary to be lawfully fixed.

The legislature has made every effort to establish orderly procedures and to perpetuate the democratic function in the event of the untimely death of candidates for public office. R.S. 18:281 specifically requires that the Secretary of State shall not place on the ballot the name of any person not nominated in accordance with the statutes. R.S. 18:621 provides: "All nominations by political parties recognized by law shall be as provided in the primary election laws." R.S. 18:361 provides in clear and detailed language that when a candidate dies within thirty days of the primary and there remains another candidate for the same office, "all votes cast for all remaining candidates or nominees shall be null and void and shall not be counted except as hereinafter otherwise provided in this Sub-section. Then the respective committees having authority to call primary elections *shall* call and hold another primary election within the time as provided in R.S.

18:305 to nominate candidates for the office in a special election, called as provided by R.S. 18:631 . . . ." (Emphasis added).

R.S. 18:631 repeats the provision concerning the death of a candidate within thirty days of the primary, and repeats the plan with reference to general elections. If a nominee dies before the general election, 18:631 prohibits the counting of ballots for the remaining candidates for that office and requires the calling of a special general election "at which special election the person chosen to fill the vacancy due to any death and the remaining candidates or nominees shall be voted upon . . . ."

It can hardly be argued that the legislature did not intend what it plainly says in the primary election laws and again in the general election laws: when a candidate dies within a certain date of the first primary or the general election, that election is voided and a new, special, election shall be called.

We do a disservice to orderly democratic process when we permit a political party to ignore legislative requirements for the conduct of elections.

SUMMERS, Justice (dissenting).

The majority agrees with the reasons advanced by the Committee in its brief to support the result reached. Those reasons, as I understand them, assert the act applies

only to "candidates" or "nominees", that is, persons who have received the majority vote in the primary and have not yet been declared the "nominee" by the proper committee; or the act applies to a "nominee", that is, a person who has been declared "nominee" of a political party, either because he was unopposed or because he has received the primary election vote which was necessary to permit the party committee to declare him the "nominee".

This argument fails to take into consideration that Section 361, subd. D of Title 18 of the Revised Statutes applies to death of a *candidate* "within thirty days of the day fixed for the first primary election." This is the identical factual situation this case presents. The statute applies in un-mistakable terms to "the first primary election."

Moreover, the facts of this case do not present a situation where a person has become a "candidate" of a political party because he is a "nominee" of that party.

A person who has offered himself for election in a party primary is a "candidate" as the act declares. This designation is in keeping with plain ordinary meaning of the word. La.Civil Code arts. 13 and 14. Any attempt to destroy the statute's intent by distorted reasoning and by reference to imagined facts not presented by the instant case is an abuse of judicial power.

I respectfully dissent.