134 So.2d 627 (1961)
Francis R. LELONG
v.
Matthew R. SUTHERLAND et al.
No. 583.
Court of Appeal of Louisiana, Fourth Circuit.
November 7, 1961.
Rehearing Denied November 10, 1961.
Certiorari Denied November 29, 1961.
*628 Ogden, Woods, Henriques & Rives, Charlton B. Ogden, II, for plaintiff-appellant.
Samuel I. Rosenberg, for defendants-appellees.
Before REGAN, YARRUT, SAMUEL, JOHNSON, and JANVIER, JJ.
YARRUT, Judge.
This is an appeal by plaintiff from a judgment denying him a preliminary and permanent injunction after a trial on the merits. Plaintiff appears alone and solely in his capacity of a taxpayer and citizen, not as a claimant to the office. Defendants, respectively, are the Orleans Parish School Board and the individual members thereof, who are presently holding office by virtue of an election under LSA-R.S. 17:121; pursuant to La.Const. mandate under Art. 12, § 10, LSA.
Plaintiff seeks injunctive relief to restrain and prohibit defendants, collectively and individually, from holding themselves out and acting as the legally constituted Orleans Parish School Board for the current year 1961-1962. The basis for plaintiff's relief is that defendants are functus officio and unauthorized to act as the School Board by virtue of Act 4, Third Extra Session of 1960 of the Louisiana Legislature, which repealed LSA-R.S. 17:121, creating it. At the conclusion of the trial the district judge, while giving no formal written reasons for denying the injunction, made the following observation, viz.:
"* * * You have a great many serious constitutional questions involved, but I do not see how it is necessary to pass on any of these questions, whether you are right or wrong in your contentions. All other Boards have been enjoined. There is nobody to run the schools except this Board. Whether it is a de jure board or a de facto board, it is the only one that can operate the schools. If I issue the injunction, all of the schools in Orleans Parish would have to close at once, those that are segregated as well as those that are integrated; and we would have nothing but chaos in this city.
"If this Board doesn't adopt the budget and pay the teachers and the cost of operating schools, we won't have any schools. Since they are at least a de facto board, they are the only ones who can adopt the budget and pay the teachers.
"I believe that this was the basis of the decisions in the cases in the other three divisions of this Court. This is the only Board that is functioning, and the only men who can do anything; all the others are out of business by virtue of the Federal Court injunctions. * * *"
*629 Defendants first challenge plaintiff's right, solely as a taxpayer or citizen, to institute this suit, contending that the right to try title to public office is governed exclusively by LSA-R.S. 42:76, par. (1), and LSA-R.S. 42:77, as follows:
LSA-R.S. 42:76
"An action shall be brought in the name of the state in any of the following cases:
"(1) When any person usurps, intrudes into, or unlawfully holds or exercises or attempts to remain in possession of any public office or franchise within this state.
* * * * * *
"This action shall be brought by the attorney general of the state or by the parish district attorney of the parish in which the case arises against the offender, and the suit shall be filed in the district court of that parish.
"The action may also be brought by the governor appearing in proper person or through the attorney general of the state or other counsel he may select."
LSA-R.S. 42:77
"In the cases provided in R.S. 42:76(1) and 42:76(2), the action may be brought by any person demanding possession of the office against any person claiming or exercising the functions of the office."
On the other hand, counsel for plaintiff urges that LSA-C.C.P. Art. 3901, Chapter 4, verbo "Quo Warranto," which reads as follows, authorizes this proceeding:
"Quo warranto is a writ directing an individual to show by what authority he claims or holds public office, or office in a corporation, or directing a corporation to show by what authority it exercises certain powers. Its purpose is to prevent usurpation of office or of powers."
On the merits defendants contend that Act 4 is violative of the state Constitution in that, by the mere device of repealing a former statute creating the Board, and providing for the election of its members, it has sought to deprive defendants of their duly elected public office, in violation of the impeachment, addressing out of office, and recall elections, as provided by La. Const. Art. 9, §§ 1 through 9.
Defendants further contend that Act 4 has been declared unconstitutional by a three-judge federal court and approved by the Supreme Court of the United States, in the case of Bush v. Orleans Parish School Board, D.C., 191 F.Supp. 871, in which suit a temporary injunction was granted, specifically declaring said Act to be unconstitutional and enjoining its enforcement. This decision was affirmed by the Supreme Court of the United States on June 19, 1961 (Nos. 868 and 967, October Term, 1960). Denny v. Bush, 367 U.S. 908, 81 S.Ct. 1917, 6 L.Ed.2d 1249; Legislature of Louisiana v. United States, 367 U.S. 908, 81 S.Ct. 1925, 6 L.Ed.2d 1250.
The Intrusion into Office Statute makes it clear that a taxpayer, as such, has no standing to challenge the right of an incumbent to hold and perform the duties of such public office. LSA-C.C.P. Art. 3901, Chapter 4, under "Quo Warranto," might appear to give such authority. While there is nothing in the text of Art. 3901 to justify such conclusion, the editorial comment under the Article (par. b), explains that the provision referring to "public office" was incorporated on the theory that the Intrusion into Office Act does not give an individual the right to file suit except when he is claiming the office.
In the case of Roberts v. Caddo Parish School Board, 213 La. 436, 34 So.2d 916, our Supreme Court held that, under the Louisiana Constitution (Art. 14, § 14(n), LSA, resident property taxpayers of a school district were "persons in interest" entitled to bring suit to contest parish *630 school board action and bond issues creating consolidated School District No. 2, in Caddo Parish, embracing previously operative school districts, and were not confined to their remedy under the Intrusion into Office Statute.
That case is not decisive here. Plaintiff here is not seeking to enjoin defendants from performing an unconstitutional act, but is seeking to declare that defendants have no valid legal right to perform any act, whether constitutional or not.
The Intrusion into Office Statute is a special substantive statute, limiting to those named the right to challenge incumbents of public office to hold and exercise the duties of such office. LSA-C.C.P. Art. 3901 is a general procedural statute defining the character of a writ of "Quo Warranto," and establishes an immediate, direct, adequate and speedy remedy only for those who, by substantive law, have the right to challenge public and private corporate officers in their right to hold and perform the duties of such office.
Where there is an apparent conflict between a general law and a special law on the same subject, the special law must prevail in the particular matter to which it applies, and even though the general law has been enacted subsequent to the enactment of the special law, the special law is not thereby repealed by implication; and is only affected if reference is made to it expressly. Hewitt v. Webster, La.App., 118 So.2d 688, and authorities therein cited.
Plaintiff, then, appearing as a taxpayer only, without any claim to the office challenged, has no right to remedy; hence, has no right of action herein. As plaintiff has no right of action herein, the adjudication of the other issues would be mere obita dicta.
For the reasons assigned, the judgment of the district court is affirmed, plaintiff to pay the costs in both courts.
Affirmed.
JANVIER, Judge, (concurring).
I have some slight fear that our new Code of Civil Procedure by Article 3901, in Chapter 4, "Quo Warranto," intended to give to an individual the right to challenge the authority of someone purporting to hold public office.
I base this fear to some extent on the fact that in the Code of Civil Procedure, following Article 3901, there is an editorial note to the effect that:
"(b) The provision referring to public office was incorporated on the theory that the Intrusion into Office Act, R.S. 42:76 et seq., does not give an individual the right to file suit except when he is claiming the office."
Because of this fear, however slight it is, I would have preferred to decide this matter on the fundamental question which is presented, i. e., whether we of the State Courts are absolutely controlled by the decisions of the Federal Courts on a matter involving the constitutionality of a State statute, which statute is held by the Federal Courts to be unconstitutional solely because of the alleged motive which prompted the State Legislature to enact it.
The Federal Courts have held many times that they did not have this power until the decision in Bush v. Orleans Parish School Board, D.C., 191 F.Supp. 871, asserted it. However, in that case the United States District Court for the Fifth Circuit did assert such power, and this decision was approved by the Supreme Court of the United States on June 19, 1961, Nos. 868 and 967, October Term, 1960.
In that opinion there is not one word which mentions any Federal question and the entire opinion is based on the belief that the passage of the statute was the result of improper motives on the part of the members of the Louisiana Legislature.
Unhappily I feel that we are bound by that decision and that, since Act 4 of the *631 Third Extra Session of 1960 has been declared by those courts to be violative of the Federal Constitution because of the alleged motive which prompted its enactment, we have not the power to breathe life into that statute.
The Constitution of the United States in Article VI provides in part:
"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."
The remarkable fact is that if and when our schools are, unhappily, completely desegregated and the atmosphere which is charged to have prompted the enactment of the statute in question has been dissipated, there can be no doubt that the question which apparently the Federal Courts think was presented in the Bush case will no longer exist, the State Legislature could unquestionably adopt the identical statute again and it would then be held to be constitutional.
My belief that the Federal Courts, until the decision in the Bush case, did not attempt to assert any such power and that until that decision they had no such power is founded on many decisions which have been rendered in the past.
In Newton v. Mahoning County Commissioners, 100 U.S. 548, 559, 25 L.Ed. 710, the Supreme Court said:
"The legislative power of a State, except so far as restrained by its own constitution, is at all times absolute with respect to all offices within its reach. It may at pleasure create or abolish them, or modify their duties. It may also shorten or lengthen the term of service. * * *"
In Higginbotham v. City of Baton Rouge, 306 U.S. 535, 59 S.Ct. 705, 83 L.Ed. 968, in an opinion unanimously adopted, Mr. Chief Justice Hughes used this identical language.
Judge Rives, author of the Bush opinion, in Shuttlesworth v. Birmingham Board of Education, D.C., 162 F.Supp. 372, 381, said:
"In testing constitutionality `we cannot undertake a search for motive.' `If the State has the power to do an act, its intention or the reason by which it is influenced in doing it cannot be inquired into.' Doyle v. Continental Insurance Co., 94 U.S. 535, 541, 24 L.Ed. 148. * * *"
See also Daniel v. Family Sec. Life Ins. Co., 336 U.S. 220, 221, 224, 69 S.Ct. 550, 552, 93 L.Ed. 632, and cases there cited.
In Barenblatt v. United States, 360 U.S. 109, 79 S.Ct. 1081, 1096, 3 L.Ed.2d 1115, the Supreme Court said:
"* * * So long as Congress acts in pursuance of its constitutional power, the Judiciary lacks authority to intervene on the basis of the motives which spurred the exercise of that power. State of Arizona v. State of California, 283 U.S. 423, 455, 51 S.Ct. 522, 526, 75 L.Ed. 1154, and cases there cited. * * *"
This basic constitutional principle is stated as follows in State of Arizona v. State of California, supra [283 U.S. 423, 51 S.Ct. 526]:
"Into the motives which induced members of Congress to enact the Boulder Canyon Project Act, this court may not inquire. McCray v. United States, 195 U.S. 27, 53-59, 24 S.Ct. 769, 49 L.Ed. 78, 1 Ann.Cas. 561; Weber v. Freed, 239 U.S. 325, 329, 330, 36 S.Ct. 131, 60 L.Ed. 308, Ann. Cas.1916C, 317; Wilson v. New, 243 U.S. 332, 358, 359, 37 S.Ct. 298, 61 L.Ed. 755, L.R.A.1917E, 938, Ann.Cas. 1918A, 1024; United States v. Doremus, 249 U.S. 86, 93, 94, 39 S.Ct. 214, *632 63 L.Ed. 493; Dakota Central Telephone v. [State of] South Dakota, 250 U.S. 163, 187, 39 S.Ct. 507, 63 L.Ed. 910, 4 A.L.R. 1623; Hamilton v. Kentucky Distilleries [& Warehouse] Co., 251 U.S. 146, 161, 40 S.Ct. 106, 64 L.Ed. 194; Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 210, 41 S.Ct. 243, 65 L.Ed. 577. * *"
In a footnote to this case, which appears on page 455 of this decision on page 526 of 51 S.Ct., appears the following:
"Similarly, no inquiry may be made concerning the motives or wisdom of a state Legislature acting within its proper powers. United States v. Des Moines Navigation & Railway Co., 142 U.S. 510, 544, 12 S.Ct. 308, 35 L.Ed. 1099; Atchison, Topeka & Santa Fe R. R. Co. v. Matthews, 174 U.S. 96, 102, 19 S.Ct. 609, 43 L.Ed. 909; Calder v. [State of] Michigan, 218 U.S. 591, 598, 31 S.Ct. 122, 54 L.Ed. 1163; Rast v. Van Deman & Lewis [Co.], 240 U.S. 342, 357, 366, 36 S.Ct. 370, 60 L.Ed. 679, L.R.A. 1917A, 421, Ann.Cas.1917B, 455. Compare O'Gorman & Young, Inc., v. Hartford Fire Insurance Co., 282 U.S. 251, 258, 51 S.Ct. 130, 75 L.Ed. 324."
In Calder v. State of Michigan, 218 U.S. 591, 598, 31 S.Ct. 122, 123, 54 L.Ed. 1163, is found the following:
"* * * But we do not inquire into the knowledge, negligence, methods or motives of the legislature if, as in this case, the repeal was passed in due form. United States v. Des Moines Nav. & Railway Co., 142 U.S. 510, 544, 35 L.Ed. 1099, 1109, 12 Sup. Ct.Rep. 308. * * *"
There are innumerable other similar decisions.
In Hans v. State of Louisiana, 134 U.S. 1, 10 S.Ct. 504, 507, 33 L.Ed. 842, the Supreme Court quotes the following words from the immortal John Marshall:
"* * * I hope that no gentleman will think that a state will be called at the bar of the federal court. * * * It is not rational to suppose that the sovereign power should be dragged before a court. * * *"
In spite of all of these decisions I am forced to the conclusion that, whether right or wrong, a decision of the Supreme Court of the United States which declares unconstitutional a statute of this State renders us powerless to reach a different conclusion and to resurrect that statute after its crucifixion by superior authority.
I concur in the decree.
JOHNSON, Judge (dissenting).
This is not an intrusion into office suit. The majority opinion has maintained the exception of no right of action filed by counsel for defendants. That opinion, as I understand it, considers this suit strictly and solely as one to try title to the office of school board membership as to each individual defendant. A cursory reading of the prayer of plaintiff's petition will disclose that plaintiff seeks to enjoin defendants from performing any number of specified actions. Plaintiff's petition in its allegations and prayer covers several grounds of complaint. While this petition and the prayer could have been expressed in a different manner, it is the accepted practice with many attorneys to ask for everything they can think about in the hope that the Court will grant some phase of the relief sought. Therefore I believe that a reasonable interpretation of the prayer is that the portion of the prayer asking the court to decree that defendants are not the School Board and they have no legal right to act as such is merely incidental, the gravamen of the demand being to enjoin specific actions.
If the plaintiff were claiming title to the office as a member of the School Board there would be more merit to the majority ruling herein under the provisions of LSA-R.S. 42:76. The prime purpose of this suit being what it is, as indicated above, I think this plaintiff has the right to bring it by the authority of Article 3601 of the Louisiana *633 Code of Civil Procedure LSA. One of the paramount offices of the preemptory exception of no right of action is to bring into question the capacity of the plaintiff to sue. Formerly a quo warranto proceeding applied to private corporations. Under the authority of the new Code of Civil Procedure the proceeding can now be directed to a public official, which provision was deliberately inserted, and the article also says that: "Its purpose is to prevent usurpation of office or of powers." The comment under that article, made a part of the legislative act, includes this statement: "(b) The provision referring to public office was incorporated on the theory that the Intrusion Into Office Act R.S. 42:76 et seq., does not give an individual the right to file suit except when he is claiming the office." There is no conflict between this article and LSA-R.S. 42:76, to render this article inoperative.
In Roberts et al. v. Caddo Parish School Board, 213 La. 436, 34 So.2d 916, individual taxpayers sought to enjoin the creation of a consolidated school district (a political subdivision) and the issuing of bonds in connection therewith. Our Supreme Court held that under our Constitution resident property taxpayers were "persons in interest" entitled to bring suit to contest the parish school board action.
The concurring opinion herein by Judge JANVIER discusses the law applicable to the merits of this controversy. I desire to carry that discussion a little further.
The oral observation of the lower court (quoted in the majority opinion above) in denying the injunction and dismissing this suit made it clear that the lower court's ruling was not based upon any law or jurisprudence, but upon the fear of the trial judge that chaos in the school operations would result. As plausible as that approach may be, whenever a judicial tribunal renders its decisions based on considerations of what is the best policy at the moment, rather than upon the law, then confusion sooner or later surely will follow, as evidenced by the many policy decrees of the Federal Courts pertaining to Louisiana legislative enactments within the recent past. Often, a status of strength and clarity grow out of confusion. If any confusion resulted by granting the relief asked for by this plaintiff, then it would be the duty of the Legislature to correct it forthwith.
The Louisiana Legislature at its third special session of 1960 adopted Act 4, amending LSA-R.S. 17:121 et seq., to create and provide for the election of a new New Orleans Parish School Board. The Federal District Court in Bush v. Orleans Parish School Board, 191 F.Supp. 871, issued a preliminary injunction against the enforcement of that act. The Supreme Court of the United States affirmed that decision without a hearing. The concurring opinion herein says that this court must recognize that affirmation by the United States Supreme Court. There would be greater reason for that position if the Federal decree in the Bush case were final and rendered on a trial of that case on the merits. The present injunction in that case was issued on the trial of a rule nisi and the judgment making the rule absolute is interlocutory. If and when that case is heard on the merits the chances are that the decision will not be different but we can always hope and act as if it will be changed if we believe that it should be. This court is not bound by the interlocutory decree in the Bush case for the reason that the Supreme Court of the United States has said in any number of decisions that only a final decree on the merits of a case shall be accepted as the law and serve as a bar to another suit on a given subject by other parties. Rogers v. Hill, 289 U.S. 582, 53 S.Ct. 731, 77 L.Ed. 1385; Public Service Commission of Wisconsin v. Wisconsin Telephone Co., 289 U.S. 67, 53 S.Ct. 514, 77 L.Ed. 1036, and Costello v. United States, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (quoting from Hughes v. United States, 4 Wall. 232, 18 L.Ed. 303).
Another reason we may entertain a shred of hope that the Federal Courts could possibly render a correct decision in the Bush *634 case on the merits is that the interlocutory decree referred to above is so patently wrong in the light of Federal and State jurisprudence on the subject of supervisory jurisdiction of the Federal Courts over a state legislature where no Federal violation is involved. There was no Federal question in the Bush case until the Federal District Court supplied it by presumption from outside the record which no court has a right to do. The matter of integration or segregation of schools had nothing to do with it, because the schools in New Orleans were already integrated and Act 4 said not one word about that subject or the court orders with respect thereto. Instead of assuming something foreign to the provisions and purposes of the act, the Federal District Court should, I think, assume that the new board created by that act would perform its duties lawfully. The new board did not qualify and therefore it performed no unlawful action to be enjoined.
Another reason we can hope that correction in the final judgment in the Bush case is not outside the realm of possibility is found in such decisions as Newton v. Mahoning County Commissioners, 100 U.S. 548, 25 L.Ed. 710, where the United States Supreme Court said:
"The legislative power of a State, except so far as restrained by its own Constitution, is at all times absolute with respect to all offices within its reach. It may at pleasure create or abolish them or modify their duties. It may also shorten or lengthen the term of service. And it may increase or diminish the salary or change the mode of compensation."
See, also, to the same effect, Higginbotham v. City of Baton Rouge, 306 U.S. 535, 59 S.Ct. 705, 83 L.Ed. 968 and other authorities cited therein. Judge JANVIER'S concurring opinion cites and quotes from other and stronger decrees to the same effect.
Our own Supreme Court, through Mr. Justice Hamlin, less than a year ago, in Singlemann v. Davis, 240 La. 929, 125 So. 2d 414, 418, where the constitutionality of an act of the Louisiana Legislature very similar to said Act No. 4 was under consideration, said:
"Where an act is constitutional on its face, courts cannot assume that it will be given an unconstitutional application or construction or be administered unconstitutionally."
The crux of this case is whether or not said Act No. 4 is in any way in violation of the State or Federal Constitution. I can find no part of the act to indicate any such violation. Therefore, the defendants should be enjoined from collecting and spending public money.
I respectfully dissent.
Rehearing denied.
JOHNSON, J., is of the opinion that a rehearing should be granted.