405 So.2d 850 (1981)
Lawrence REGIRA, et al.
v.
Ralph FALSETTA, et al.
No. 14601.
Court of Appeal of Louisiana, First Circuit.
May 22, 1981.
*851 Edward Hardin, Baton Rouge, and Victor L. Marcello, Donaldsonville, for appellants.
Charles L. Patin, Jr., Baton Rouge, and Glynn Long, Donaldsonville, for appellees.
Before ELLIS, COVINGTON, LOTTINGER, CHIASSON, EDWARDS, PONDER, LEAR, COLE and WATKINS, JJ., En Banc.
PER CURIAM:
This is an election case in which one of the candidates for Mayor of the City of Donaldsonville, Louisiana, died after the primary election, leaving only one other candidate, the Honorable Ralph Falsetta, whom the Secretary of State intends to certify to the Governor as elected Mayor pursuant to the provisions of LSA-R.S. 18:512 B.
Plaintiffs, in the trial court and in this court, contend that the aforesaid statute is unconstitutional and therefore ask for various remedies.
After considering the factual matters, which were stipulated by the parties, the trial judge found the subject statute to be constitutional.
We have read the record and thoroughly researched the matter. The trial judge is correct. His exhaustive, excellent reasons for Judgment, attached hereto as Appendix A, are correct and we adopt them as our own.
Also, see Vining v. Democratic Executive Committee for the 32nd Representative District, 204 So.2d 801 (La.App. 2nd Cir. 1967), writ refused, 251 La. 678, 205 So.2d 442 (1967).
*852 The judgment is affirmed at appellants' cost.
AFFIRMED.
COLE, J., concurs in the result.
LOTTINGER, J., concurs and assigns reasons finding LSA-R.S. 18:1409 H unconstitutional.

APPENDIX A

JUDGMENT:
PAUL B. LANDRY, Jr., Judge Pro Tem.
This is an election contest in which plaintiffs assert constitutional grounds for challenging the alleged election of defendant Ralph Falsetta, as Mayor, City of Donaldsonville, pursuant to a primary election held April 4, 1981. Falsetta and certain state officials assert and proclaim Falsetta's election although no candidate in the primary obtained a majority vote and no general election has been held to fill the office for the ensuing term commencing July 1, 1981.
Four candidates participated in the primary election, receiving votes as follows: Lawrence "LaLa" Regira, incumbent and candidate for re-election 1299; defendant Ralph Falsetta 1040; Glynn "Sonny" Long 670; and, Dr. D.C. Foti 454. Falsetta and Regira were accordingly certified to participate in a general or run-off election to be held May 16, 1981. On May 2, 1981, the incumbent, Regira, died, leaving Falsetta as the unopposed candidate in the pending general election. Following Regira's demise, Falsetta has claimed election which claim has been confirmed by the Hon. James Brown, Secretary of State, State of Louisiana, who, pursuant to LSA-R.S. 18:512 B has issued ballots for the general election listing no candidates for the office in question. By letter dated May 11, 1981, the Secretary of State has indicated his intent to certify to the Governor, within 30 days of the scheduled general election, the name of defendant Falsetta as elected Mayor by the people pursuant to LSA-R.S. 18:512 B, for the ensuing term commencing July 1, 1981.
Plaintiffs Lawrence Regira, Jr., Mrs. Lawrence Regira, Dennis Burns, Janet Regira Burns, Wilbert Huey, Mildred Dorsey, Dorothy M. Williams, Robert Johnson, William E. LeBlanc, Michael McKinney, Vic Marcello, Emerson Taylor, Lawrence Chatman, Jr., Delores Wright, Eunice Mumford, Mary Agnes Dorsey, Stanford Knockum and Vincent "Cy" Tortorich, assert a class action which was abandoned at the start of the trial. Alternatively, they appear in their individual capacities as residents of Donaldsonville and registered voters qualified to vote for the office of Mayor.
Named defendants are: (1) Ralph Falsetta; (2) The Hon. James Brown, Secretary of State, State of Louisiana; (3) The Board of Supervisors of Elections of Ascension Parish; (4) The Hon. William Guste, Attorney General, State of Louisiana, and (5) The Hon. David Treen, Governor of Louisiana.
Plaintiffs pray: (1) That the Secretary of State be restrained from certifying defendant Falsetta to be the elected Mayor of Donaldsonville; (2) That the Attorney General be served herein; (3) That a writ of quo warranto issue directing defendant Falsetta to show by what authority he claims the office of Mayor; (4) That preliminary and permanent injunctions issue restraining and prohibiting the Secretary of State, State of Louisiana, from declaring and certifying Falsetta to be Mayor of Donaldsonville; (5) That a writ of mandamus issue directing the Secretary of State to withhold certification of defendant Falsetta as the elected Mayor of Donaldsonville; (6) That mandamus issue directing Governor Treen to call a special election pursuant to law to fill the alleged vacancy in the office of Mayor of Donaldsonville; (7) That mandamus issue directing defendant Board of Election Supervisors to perform the duties incumbent upon for the conduct of the special election; (8) That declaratory judgment issue in favor of plaintiffs declaring LSA-R.S. 18:512 B unconstitutional; and, (9) That the request for preliminary and permanent injunctions be consolidated.
Plaintiffs challenge is based solely on the ground that Section 512 B, above, pursuant *853 to which the Secretary of State proposes to certify Falsetta as Mayor, is violative of the Fourteenth (due process and equal protection clauses) Amendment to the United States Constitution, and Louisiana Constitution Article 1, Section 2 (due process), Section 3, (equal protection); and, Section 10 (the right to vote).
Plaintiffs argue that the constitutionally guaranteed right to vote is the cornerstone of our democracy and so vital to the continued existence of our form of government that any infringement or restriction thereof must be subjected to strictest scrutiny. It is also urged that any legislative regulation or restriction on this right must be predicated on a compelling interest embodied therein. According to plaintiffs, the nature of the election process is primarily the presentation of a choice to the voters in every phase of the election procedure. To this end, plaintiffs argue, Louisiana has adopted a two election system of primary and general elections, thus eliminating the former antiquated system which frequently resulted in three elections when it became necessary to choose party candidates because a party candidate was not chosen in a first primary election.
Plaintiffs note that LSA-R.S. 18:469 provides for reopening of qualification for office if a candidate dies before a primary election in that the statute provides:
[A] When a person who qualified as candidate in a primary election for a public office dies after the close of the qualifying period and before the time for closing the polls on the day of the primary election, the qualifying period for candidates in the primary election for that office shall reopen for candidates on the day after the death and shall close at 5:00 p. m. on the third day after the death or, if that day is a legal holiday, at 5:00 p. m. on the next day which is not a legal holiday. The name of the deceased candidate shall not be printed on the primary election ballot. If the primary election ballot was printed with the deceased candidate's name on it, any votes received by the deceased candidate shall be void.
LSA-R.S. 18:469 D pertinently states:
D. Effect on primary elections. If the qualifying period for candidates reopens within thirty days before a primary election, all the votes cast in the primary election for that public office are void, unless the qualifying period opened and closed without additional candidates qualifying for that [the] office. [...] If all the votes cast in a primary election for a public office are void because of the death of a candidate, the primary election for the office shall be held on the date of the general election, and the general election for the office shall be held on the sixth Saturday after the primary election.
Plaintiffs note that LSA-R.S. 18:512 B, makes no similar provision for reopening qualifying time when a candidate participating in a general election dies or withdraws, but, instead, provides as follows:
Election of unopposed candidates. If[,] as a result of the death or withdrawal of one or more candidates, the number of candidates for an office in a general election does not exceed the number of persons to be elected to the office, the remaining candidates are declared elected by the people, and their names shall not appear on the ballot in the general election. (Emphasis by the Court).
Plaintiffs maintain that Section 469, above, serves the best interests of the state and its electors by providing an orderly and economical election process in primary elections by establishing a procedure in which the electorate participates at every stage and establishes a reasonable and fair process which should logically apply to general elections as well. Section 512 B, above, according to plaintiffs is fundamentally unfair, contrary to the principle of free and open elections and violative of the concept of majority rule in that it denies and infringes upon the right of the electorate to choose public officials. Plaintiffs place considerable stress upon the fact that more than two-thirds of those voting in the primary election here involved, did not vote *854 for defendant Falsetta. Consequently, it is argued that if applied herein, Section 512 B, above, vitiates the will of two-thirds of those voting in the primary, thus producing an unfair and unjust result.
Defendants have filed exceptions of no right and no cause of action alleging plaintiffs' lack of capacity to institute an individual action and asserting that as a matter of law no remedy is available to plaintiffs herein. Defendants also assert plaintiffs right to institute an action of quo warranto because plaintiffs are not claiming the office involved. A plea of prescription if also advanced on the provisions of LSA-R.S. 18:512 B. The Governor, Secretary of State, and Attorney General have filed an exception to the venue on the ground that proper venue after them is East Baton Rouge Parish.
On the merits, defendants allege that plaintiffs erroneously contend that the right to vote is the primary issue herein. Rather, according to defendants, the issue is simply the method of selection of candidates for office therefore the constitutional inquiry is reasonableness of legislative action, not the compelling interest criteria as contended by plaintiffs. Defendants also note that the burden of showing unreasonableness rests upon plaintiffs. Finally, defendants argue that subject statute is a valid exercise of legislative authority and discretion and therefore invulnerable to successful attack on constitutional grounds.

THE EXCEPTION OF VENUE
The court finds no merit in this exception. This is not an action against the Governor, Secretary of State and Attorney General or any combination of said officials alone. The suit is also against defendant Falsetta, a resident of Ascension Parish and the Board of Supervisors of Elections of Ascension Parish. The proper venue as against these later parties is Ascension Parish. The court holds, therefore, that under the circumstances the Governor, Attorney General and Secretary of State, as indispensible parties to this action, are properly before the court.

THE EXCEPTIONS OF NO RIGHT AND NO CAUSE OF ACTION
In general the right to an individual action in an election contest suit is governed by LSA-R.S. 18:1401 C which states:
C. A person in interest may bring an action contesting any election in which any proposition is submitted to the voters if he alleges that except for irregularities or fraud in the conduct of an election the result would have been different.
Notwithstanding the apparent restrictive scope of Section 1401 C, above, our jurisprudence recognizes the right of a citizen, taxpayer and voter not a candidate for office, to challenge implementation of the election process. Baker v. Democratic Central Committee of Louisiana, 262 La. 1033, 266 So.2d 199 (1970).
This court cannot conceive that the legislature intended to preclude the right of an interested voter to challenge the election process on constitutional grounds. Such legislation, in the view of this court would itself be unconstitutional. The court holds therefore that plaintiffs have, as individual taxpayers and voters, a right and cause of action herein.

PRESCRIPTION
Defendants maintain the action is prescribed because it was not instituted within five days of the date of Regira's death. Pertinent are the provisions of LSA-R.S. 18:1405 B which states:
B. An action contesting any election involving election to office shall be instituted within five days after the date of the election, and no such contest shall be declared moot because of the performance or nonperformance of a ministerial function, including but not limited to matters relating to the printing of ballots for the general election.
Plaintiffs reason that since Falsetta's alleged "election" is predicated on Section 512 B, above, the "election" took place on May 2, 1981, the date of Regira's death, and this action having been brought May 12, 1981, is untimely.
*855 The court rejects this argument upon finding that the intent of Section 512 B, above, is apparently that the date of election envisioned therein is the date on which the Secretary of State certifies to the Governor the name of the surviving general election candidate within thirty days of the date of the scheduled general election. Since no such certification has yet been made, the prescriptive period has not commenced and therefore could not prescribe.

QUO WARRANTO
The purpose of a writ of quo warranto is to test the authority of one holding office or of an intruder attempting to exercise the power and authority of an office. LSA-R.S. 42:76; LSA-C.C.P. Article 3901. Lelong v. Sutherland, 134 So.2d 627 (La.App. 4th Cir. 1961).
A party appearing solely in an individual capacity and not as claimant to public office has no standing to invoke quo warranto proceedings. Small v. Levy, 355 So.2d 643 (La.App. 4th Cir. 1978), writ denied May 5, 1978. To the same effect see Lelong, above.
Since plaintiffs do not claim the office in question, the application for writ of quo warranto is denied.

CONSTITUTIONALITY
In support of the claim of unconstitutionality, plaintiffs cite numerous cases dealing with fundamental rights (due process and equal protection), in which area the United States Supreme Court has repeatedly held there can be no discrimination or distinction except that predicated upon some "compelling" state reason and that all statutes of this nature are held to strictest scrutiny to insure no such protected rights are violated. It is contended this same rule of interpretation applies to the fundamental right to vote. It is then argued that the legislature has recognized the fundamental nature of the right of franchise and right of the people to elect officials by providing in Section 469, above, that qualifying shall be reopened if a candidate dies within 30 days of the date of a primary election. To fully implement and preserve the franchise, it is argued that the same provision should apply to general elections. According to plaintiffs, Section 512 B, is not only contrary to the legislatively expressed intent of our Election Code as a whole, but also offends on the stated constitutional grounds.
The court has read all of the authorities cited and finds that while persuasive, in that they do indeed deal with the general principle that statutes dealing with fundamental rights will be strictly scrutinized and must pass the test of compelling state interest, they are not controlling in that none are concerned expressly with the constitutional guarantee of the vote. For example, Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944), concerned denial of voting rights because of race; Kramer v. Union Free School District No. 15, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969) concerned laws requiring property ownership and parentage as qualifications for voting; Harper v. Virginia Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966), declared invalid a poll tax requirement; and Cipriano v. Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969), declared invalid a property taxpayer requirement as a voter qualification.
No authority has been cited in support of plaintiff's contention that subject statute infringes upon the right to vote as guaranteed in Article 1, Section 10 of the Louisiana Constitution. That is, no authority directly in point, has been cited on the issue and this court has been unable to find such a precedent.
In contending that the issue here is candidate selection, and not the right to vote as contended by plaintiffs, defendants rely primarily upon the provisions of our Election Code and Fortson v. Morris, 385 U.S. 231, 87 S.Ct. 446, 17 L.Ed.2d 330 (1966), which involved a constitutional assault on provision of the Georgia Constitution whereby the Governor of that state should be selected by majority vote in a general election and alternatively, by the state's legislature choosing between the two candidates having the most votes in the event no candidate received a majority vote. The Supreme Court *856 held that while election by majority vote is preferred, the alternative method provided by the Georgia Constitution was not invalid and noted:
It set up two ways to select the Governor. The first and preferred one, was election by a majority of the people; the second, and alternative one, was election by the State Assembly if any one candidate failed to receive a majority of the popular vote. Under the second method, in the legislative election the votes of the people were not to be disregarded but the State Assembly was to consider them as in effect nominating votes and to limit itself to choosing between the two persons on whom the people had bestowed the highest number of votes. There is no provision of the United States Constitution or any of its amendments which either expressly or impliedly dictates the method a State must use to select its Governor. A method which would be valid if initially employed is equally valid when employed as an alternative. It would be surprising to conclude that, after a state has already held two primaries and one general election to try to elect by a majority, the United States Constitution compels it to continue to hold elections in a futile effort to obtain a majority for some particular candidate.
Fortson, above, noted that Mississippi and Vermont also provide for election of their Governors in the same manner as Georgia. The decision also noted that 38 states provide for gubernatorial election by plurality vote and that in case of a tie the legislature shall elect. Fortson, above, concluded that the Georgia Constitutional provision did not violate the equal protection clause of the Federal Constitution.
Gordon v. Lance, 403 U.S. 1, 91 S.Ct. 1889, 29 L.Ed.2d 273 (1971) followed Fortson, above, and held that a West Virginia provision requiring sixty percent voter approval of a referendum to incur bonded indebtedness or increase tax rates, did not offend constitutional requirements of the fourteenth amendment. In so holding, the Court observed:
Although West Virginia has not denied any group access to the ballot, it has indeed made it more difficult for some kinds of governmental actions to be taken. Certainly any departure from strict majority rule gives disproportionate power to the minority. But there is nothing in the language of the Constitution, our history, or our cases that requires that a majority always prevail on every issue. On the contrary, while we have recognized that state officials are normally chosen by a vote of the majority of the electorate, we have found no constitutional barrier to the selection of a Governor by a state legislature, after no candidate received a majority of the popular vote. Fortson v. Morris, 385 U.S. 231, 87 S.Ct. 446, 17 L.Ed.2d 330 (1966).
In this instance the statute does not result in unequal protection under law in that some class of voters is discriminated against because of race, poll tax requirement, property ownership or residential requirement. All persons have the right to vote in every election held pursuant to the Louisiana Election Code.
Nor does the court find any infringement, erosion or denial of the right to vote as contemplated by the appropriate provisions of the constitutions of the United States or this state.
The Election Code provides for a single primary followed by a general election in the event no candidate receives a majority vote in the primary. The required primary has been held in this instance with results necessitating a general election which was properly called. Unfortunately, one of the two candidates entitled to participate in the general election, died before the election was held.
The very nature of elections demand that they be conducted expeditiously with the view of achieving earliest possible finality commensurate with due process of law requirements. The orderly conduct of governmental affairs requires that official succession to public office be determined, when possible and practicable, prior to commencement of the term for which the election is held.
LSA-R.S. 18:1432 A provides the remedies which may be ordered in an election *857 contest. It provides that upon finding an election void for reasons authorized therein:
___ the judge may render a final judgment declaring the election void and ordering a new primary or general election for all the candidates, or, if the judge determines that the appropriate remedy is the calling of a restricted election, the judge may render a final judgment ordering a new election and specifying the date of the election, the appropriate candidates for the election, and the office or other position for which the election shall be held.
Statutes are presumed constitutional and the party alleging unconstitutionality bears the burden of proof. Buras v. Orleans Parish Democratic Executive Committee, 248 La. 203, 177 So.2d 576 (La.1965).
It is the duty of the court to uphold constitutionality of a statute whenever possible and every consideration of public need and policy upon which the legislature could rationally have based the statute should be weighed by the court and, if the statute is not clearly arbitrary, unreasonable and capricious it should be upheld as valid. State v. Rones, 223 La. 839, 67 So.2d 99 [1953].
Any doubt concerning alleged unconstitutionality of a statute must be resolved in favor of its validity. Johnson v. Collector of Revenue, 246 La. 540, 165 So.2d 466 [1964].
Application of plaintiff's position to the facts of this case would produce interesting alternative solutions. The election in question is a general election, not a primary. Defendant Falsetta survived the primary and was entitled to participate in the general election. If a new general election is held, surely Falsetta would be entitled to participate. How would his opponent be selected? Should he face the candidate having the third highest vote in the primary? If so, suppose this candidate declined to run in the general election. Should Falsetta's opponent then be the candidate receiving the fourth highest vote in the primary or should a new primary election be called? If a new primary were ordered delays could be encountered therein by the death or withdrawal of a candidate, thus delaying the general election. If a general election were ordered the death of a candidate before that election was held, would place matters in the same position as presently exists. This court believes that such eventualities are neither reasonable, practicable nor expeditious.
It is noteworthy that the term of office involved herein commences July 1, 1981. Holding of any further elections, either general or primary would delay the electee's taking office until after the date of commencement of his term.
In Raborn v. Secretary of State, 204 So.2d 630 (La.App. 1st Cir. 1967), writ refused December 1, 1967, it was held that, pursuant to LSA-R.S. 18:297 subd. D, 18:358 subds. A, C, where a first primary for multiple office left more than one person to be elected and one candidate withdrew, the remaining candidate with the highest number of votes was properly declared elected. Raborn, above, is express judicial recognition that a majority vote is not an indispensable prerequisite to election.
Declaring Falsetta elected by the people under the circumstances of this case, in pursuance of Section 512 B, above, is a reasonable exercise of legislative authority and discretion, designed and reasonably calculated to achieve a significant state interest, namely, the orderly expeditious and least costly conduct of elections for public office. Specifically, in this case it accomplishes timely accession to office which would not otherwise result.
This court finds no infringement of voting rights and holds that plaintiff's attack on Section 512 B, above, is without merit.
ACCORDINGLY, IT IS ORDERED, ADJUDGED AND DECREED that the order issued herein May 12, 1981, temporarily restraining the Hon. James Brown, Secretary of State and directing defendants to show cause why a writ of quo warranto should not be issued herein, and why the other relief sought by plaintiffs should not be granted, be and the same is hereby revoked, cancelled and recalled and plaintiffs action dismissed, with prejudice, at plaintiff's cost.
*858 Judgment read, rendered and signed in open Court at Donaldsonville, Louisiana, this 20th day of May, 1981.
LOTTINGER, Judge, concurring.
I agree with the result reached by the trial court on the merits, but find that La.R.S. 18:1409 H, requiring that courts of appeal hear election suits en banc, null and void as an unconstitutional infringement by the legislature into the rule making power of the judicial branch of government. Art. 2, §§ 1 & 2; Art. 5, § 8(B) La.Const. (1974). More complete reasons will follow.
EDWARDS, J., agrees and will assign additional reasons.
LOTTINGER, Judge (concurring with additional reasons).
I agreed in the result reached, and now file additional reasons for my conclusion that La.R.S. 18:1409 H, which provides that courts of appeal shall sit en banc in election suits, is an unconstitutional infringement by the legislature into the powers granted the judicial branch of government by the Louisiana Constitution of 1974.
Article 2, § 1 of the Louisiana Constitution (1974) provides: "The powers of the government of the state are divided into three separate branches: legislative, executive, and judicial." Section 2 of that article further provides that "no one of these branches, ..., shall exercise power belonging to either of the others."
The powers granted to the judicial branch are found in Article 5 of the Louisiana Constitution (1974). Article 5, § 8(A) in part states: "each court [of appeal] shall sit in panels of at least three judges selected according to rules adopted by the court." The constitution thus requires that a minimum of three judges of a court of appeal hear each case. Only in Article 5, § 8(B) are the courts of appeal constitutionally mandated to hear cases with more than three judges.
Each court of appeal is constitutionally granted the right to adopt rules for the administration of that court. Article 5, § 12, La.Const. (1974). In appellate courts the administration of the court includes not only the day to day operations of the court, but also the method of selection of judges to sit on a multi judge panel, Art. 5, § 8(A) La.Const. (1974), as well as the number of judges on a panel if greater than three. Needless to say, the rules adopted by the court must not be in conflict with the constitution. However, I find no constitutional provision requiring that these rules shall not be in conflict with law, i. e. statutory law. Therefore, the authority to set the numerical composition of a particular court of appeal panel rests exclusively with that court, and not the legislature.
I know of no constitutional provision or overriding public interest which would allow the legislature to infringe upon the judicial powers of the courts by mandating an en banc sitting by the courts of appeal in election suits. As a matter of practicality and in the interest of judicial economy, this courtprior to this case and prior to the enactment of La.R.S. 18:1409 Hheard election suits with panels of five judges. This practice was instituted to avoid rehearings by a five man panel in the event a three man panel's decision fell within the ambit of Article 5, § 8(B) of the Louisiana Constitution (1974).
The general rule in Louisiana is that the constitutionality of a statute cannot be raised for the first time in the appellate court. Summerell v. Phillips, 258 La. 587, 247 So.2d 542 (1971). However, I do not find this rule controlling in the instant case. The question of how many courts of appeal judges hear an election suit is of no interest to the parties involved in this litigation. It is an issue that does not affect the party litigants, but rather only the courts of appeal and the judicial branch. Therefore, the constitutionality of La.R.S. 18:1409 H is properly and timely raised in and by this court for the first time.
The fact that we have heard this election suit en banc does not mean that we agree that the legislature has the constitutional authority to adopt La.R.S. 18:1409 H. Rather, though this court is of the opinion that La.R.S. 18:1409 H is unconstitutional, judicial economy requires that we hear this suit en banc because, if the Louisiana Supreme Court rules that La.R.S. 18:1409 H is *859 constitutional, the suit will have been heard as required by statute.
Therefore, for the above and foregoing reasons, I agree in the result reached by the trial court on the merits, and find La.R.S. 18:1409 H to be null and void as an unconstitutional infringement by the legislature into the powers of the judicial branch of government.
EDWARDS, Judge, concurs.
I agree with the concurring opinion of Judge Lottinger. Additionally, the folly of requiring all appellate judges to hear every election case needs to be pointed out.
Next year, this court will likely consist of twelve judges. The Supreme Court consists of seven justices. Twenty judges (one trial, twelve intermediate, and seven supreme) do not need to hear every election case in Louisiana.
This court, by rule, has handled the problems of delay caused by re-argument by having all election cases heard by a five-judge panel.