709 So.2d 841 (1998)
Charles D. JONES
v.
BOARD OF ETHICS FOR ELECTED OFFICIALS.
Nos. 97 CW 2686, 97 CA 2854.
Court of Appeal of Louisiana, First Circuit.
February 20, 1998.
Writ Denied May 8, 1998.
*842 Lewis O. Unglesby, Baton Rouge, for Plaintiff-Appellee-Respondent Charles D. Jones.
R. Gray Sexton, Maris L. McCrory, Jennifer G. Magness, Baton Rouge, for Defendant-Appellant-Relator Board of Ethics for Elected Officials.
Ernest L. Johnson, Baton Rouge, for Louisiana Legislative Black Caucus and Louisiana State Conference NAACP Amicus Curiae.
Before LOTTINGER, C.J., and SHORTESS and FOGG, JJ.
LOTTINGER, Chief Judge.
The defendant, Board of Ethics[1], appeals the grant of a preliminary injunction in favor of plaintiff, Charles D. Jones, "enjoining and restraining DefendantBoard of Ethics from taking any action adverse to Petitioner or proceeding in any matter involving Petitioner." (Docket No. 97 CA 2854). Further, the Board of Ethics, as relator, has applied for a supervisory writ seeking to review the trial court's failure to grant relator's declinatory exception raising the objection of lack of subject matter jurisdiction and the peremptory exception raising the objections of no cause of action, nonjoinder of an indispensable party and res judicata. Relator also seeks review of the failure of the trial court to allow relator to introduce affidavits at the preliminary injunction hearing, and the grant of the preliminary injunction. (Docket No. 97 CW 2686).

PROCEDURAL HISTORY
Plaintiff filed suit on July 18, 1996, against the Board of Ethics seeking injunctive relief and a restraining order. In his petition, plaintiff alleged: that he is a state senator and that the Board of Ethics has jurisdiction over him pursuant to La.R.S. 42:1132, et seq.; that the Board scheduled a hearing for August 1 and 2, 1996, to be held in Baton Rouge, and as required by La.R.S. 42:1141(C) no hearing can be held in Baton Rouge without his consent; that the procedure to be employed by the Board is unconstitutional and denies him fundamental due process and procedural due process; that the Board sent out subpoenas through its counsel *843 of record, who also serves as administrative aide to the Board, attorney to the Board, investigator for the Board, prosecutor of the complaint, and advisor to the Board on the form and substance of its judgments; that the complaint that gave rise to the investigation against the plaintiff has been withdrawn, but upon advice from counsel to the Board, the hearing date and evidence regarding the complaint have been maintained; that in the absence of the original complaining witness or any complaining witnesses, the Board is proceeding in this matter in violation of procedural due process; that the Board is proceeding with charges that, even assuming the allegations were true, do not constitute violations of the Ethics Code; that plaintiff can and will prove his allegations as contained in the petition; that if plaintiff is denied the opportunity to prove the allegations as set forth in his petition and to stay the Board's proceedings he will suffer irreparable harm, but in any event the Board is proceeding in violation of law and no showing of irreparable harm is required; that the administrative counsel/prosecutor/assistant attorney general/legal advisor to the Board has conducted the investigation, drawn up the charges, and advised the Board as to the sufficiency of cause to conduct the hearing; that the Board intends to present this evidence at the hearing and that the Board has acted with the counsel/prosecutor/assistant attorney general/legal advisor to the Board in the investigation and charging/prosecutorial phases and will serve as judge and jury at the hearing; that the above procedure is in conflict with In re Georgia Gulf Corporation, 95-1694 (La. App. 1 Cir. 6/28/96); 676 So.2d 1187, that the facts of this case are covered by Georgia Gulf; and if prevented from doing so, the Board will go forward with the hearing on August 1, 1996; and that the Board is acting in violation of La.R.S. 49:960 A.
Plaintiff concludes that "it is the intention of the Board of Ethics to go forward against him in spite of its knowledge of the holding in the Georgia Gulf Corporation case, in direct contravention of the holding of the First Circuit Court of Appeal which is the controlling appellate court for the Board of Ethics, R.S. 42:1142, and in direct contravention of the requirements of procedural due process." Plaintiff prayed for a temporary restraining order and preliminary and permanent injunction.
On the same date, the trial court issued a temporary restraining order and set a hearing date for the preliminary injunction.
The Board applied to this court for supervisory writs to the trial court, and in Charles D. Jones v. Board of Ethics for Elected Officials, 96-1547 (La.App. 1st Cir. 7/30/96), this court held that the trial court lacked subject matter jurisdiction. Plaintiff herein then applied to the Louisiana Supreme Court for a writ of certiorari, which was granted on October 4, 1996. Ultimately the supreme court in Charles D. Jones v. Board of Ethics for Elected Officials, 96-2005 (La.5/9/97); 694 So.2d 171, reversed this court on the issue of subject matter jurisdiction, holding:
Even though in the present case we are faced with a constitutional challenge to the procedure of the Board of Ethics, unlike Midboe's [Midboe v. Commission on Ethics for Public Employees, 94-2270 (La.11/30/940); 646 So.2d 351] challenge to the constitutionality of a statute, we find the district court under these circumstances is vested with subject matter jurisdiction to decide a due process challenge to the procedure which the Board of Ethics utilizes to determine an alleged violation of the Code of Governmental Ethics. La. Const. art. 5 § 1; La. Const. 5 § 16. Accordingly, in the present case we conclude that the district court had subject matter jurisdiction to hold a hearing on Jones' petition for injunctive relief and a restraining order.
96-2005 p. 4, 694 So.2d at 173. The supreme court remanded the case to the district court for further proceedings consistent with the views expressed in its opinion and in Georgia Gulf.
The Board applied to the supreme court for a rehearing, conceding the district court had subject matter jurisdiction and suggesting that it was not necessary to remand to the district court because there had been no hearing to review, and any hearing would be conducted in accordance with the dictates of Georgia Gulf. The supreme court agreed, *844 Jones v. Board of Ethics for Elected Officials, 96-2005 (LA.6/20/97); 696 So.2d 549, on rehearing, and held:
In view of our Georgia Gulf decision, the procedure of the Board must change to comport with the views expressed therein; hence it is no longer necessary to adjudicate the constitutionality of the procedures formerly employed by the Board. Relator [Jones] will be fully protected in the future hearing by the right to assert on appeal any due process violations or other complaints about the hearing procedure used by the Board, or to otherwise seek any appropriate review of rulings and procedures before, during or after the hearing.
96-2005, p. 2, 696 So.2d at 550.
On October 7, 1997, plaintiff filed a "Supplemental Petition" in the original trial court proceeding alleging: that the Board of Ethics had replaced the Board of Ethics for Elected Officials; that the Board of Ethics shall consist of eleven members who shall be representative of the state's population as near as practicable; that of the eleven members, only one is a woman, representing 9% of the Board's membership and two are black, representing 18% of the Board's membership; that according to the 1990 census, 51.86% of the population is female, 48.14% is male, and 30.8% is black; that the Board's membership is violative of the statute because it is not representative of the state's population as near as practicable and thus the Board is illegally constituted; that these issues cannot be presented to the Board because it lacks jurisdiction thereof; that the Board had scheduled a hearing for November 19, 1997; and that plaintiff will suffer irreparable harm unless a temporary restraining issued herein.

TRIAL COURT
A hearing on the preliminary injunction, to dismiss, declinatory exception raising the objection of lack of subject matter jurisdiction and the peremptory exception raising the objections of no cause of action, nonjoinder of an indispensable party, and res judicata was held on October 17, 1997. The motion to dismiss was argued and denied. The exceptions were argued and referred to the merits. Evidence was introduced on the preliminary injunction, and the matter was submitted and taken under advisement.
On November 5, 1997, the trial court assigned extensive oral reasons for judgment. The objections of lack of subject matter jurisdiction, nonjoinder and res judicata were overruled, and the preliminary injunction was granted. The objection of no cause of action was not specifically denied by the trial judge, but inasmuch as the trial court granted the preliminary injunction, the objection was denied by implication. Judgment was signed on November 11, 1997.
The trial court determined that the makeup of the Board did not comply with legislative intent and a preliminary injunction should issue. In so ruling the trial judge said:
Moreover, the phraseology "which shall be representative of the state's population as near as practicable" was purposefully inserted in the law for legislative and gubernatorial appointees and which essentially means "generally reflects the diversity of the state." (See committee on senate and governmental affairs, verbatim transcript, page 24, meeting of March 27, 1996, Senator Jay Darden[ne] chairing.)
The evidence is unrefuted. Women comprise more than 52 percent of the state of Louisiana's population, which the black population is nearly 31 per cent.
While the act contemplates their inclusion, it does not require numerical exactitude percentages, or quotas, but certainly a fair cross-section of the community was contemplated, something akin to the jury selection idea. Thus, the legislative will has been thwarted.

ASSIGNMENTS OF ERROR
In appealing, the Board contends the trial court erred in granting a preliminary injunction as the plaintiff failed to make a prima facie showing that he was likely to prevail on the merits and that he would suffer "immediate and irreparable injury" if a preliminary injunction did not issue.
In applying for a supervisory writ, the defendant-appellant-relator contends the trial *845 court erred in failing to grant exceptions raising objections of lack of subject matter jurisdiction, no cause of action, nonjoinder of an indispensable party and res judicata, in granting the preliminary injunction and in failing to allow defendant to introduce affidavits at the hearing for the preliminary injunction.

APPEAL
A plaintiff seeking the issuance of a preliminary injunction bears the burden of establishing by a preponderance of the evidence a prima facie case. A prima facie showing requires plaintiff to demonstrate that he will prevail on the merits and that irreparable injury or loss will result without the preliminary injunction. General Motors Acceptance Corporation v. Daniels, 377 So.2d 346 (La.1979); Malek v. Yekani-Fard, 451 So.2d 669 (La.App. 1st Cir.1984). If plaintiff fails to carry his burden of proof, then the defendant, as a matter of law, is entitled to summary dismissal. Kilbourne v. Hunt, 276 So.2d 742 (La.App. 1st Cir.1973). However, where the threatened action is in direct violation of a prohibitory law, it is not necessary for the plaintiff to show irreparable injury. Louisiana Associated General Contractors, Inc. v. Calcasieu Parish School Board, 586 So.2d 1354, 1359 (La.1991).
The gravamen of plaintiff's suit is that the Board of Ethics is not "representative of the state's population as near as practicable," because of the eleven member board, only one is a female and only two are black.
The state's population as reflected in 1990 Census of Population and Housing, Summary Population and Housing Characteristics: Louisiana, issued in August, 1991, point out the following:

1990Louisiana total population: 4,219,973
1990Male population: 2,031,386
1990Female population: 2,188,587
1990White population: 2,839,138
1990Black population: 1,299,281
1990American Indian, Eskimo or
 Aleut population: 18,541
1990Asian or Pacific Islander population: 41,099
1990Other race population: 21,914

The trial judge concluded that the phrase "representative of the state's population as near as practicable," La.R.S. 42:1132, essentially means "generally reflects the diversity of the state," and cited the La. Senate Committee Verbatim Transcript.
What did the legislature intend by the phrase "representative of the state's population as near as practicable," as found in La.R.S. 42:1132? We do not find that this language is so clear and free from ambiguity so as to express what the legislature intended without resort to other evidence. Thus we look to evidence before the legislature.
The verbatim transcript of the Committee on Senate and Governmental Affairs for March 27, 1996, in its discussion of Senate Bill No. 5, reads as follows:
Yolanda Dixon: Senator Jones has 2 amendments dealing with the composition of the board members. And on page 3, line 21, after "members" insert "who shall be representative of the state's population". And on page 4, line 1, after "board" insert "who shall generally reflect the state's population" and that's both in the governor's appointees and the appointees that the House and Senate select.
Senator Dardenne: Would you give us that language again? The first one.
Yolanda Dixon: On page 3, line 21, after "members" insert "who shall be representative of the state's population and who shall be". That's the whole amendment.
Senator Dardenne: And what's the second one?
Yolanda Dixon: The second one is on page 4, line 1, after "board" insert "who shall generally reflect the state's population".
Senator Dardenne: Why wouldn't we use the same language both places?
Yolanda Dixon: We could but because we have members who have to come from these universities from among the presidents of the universities and from the PAR group, it might be harder to get that than it would be from the governor who is just selecting the members from congressional districts at large.
Senator Dardenne: Aren't they all subject to the. Just for clarification, they all come out of one collective nominating process. But go ahead. Tell us the distinction.

*846 Senator Jones: I think that Senator Dardenne is correct. To be consistent, lets us (sic) the same language "representative of the state's population. If there is a problem then as we think about this we can add additional language. In years past what we've said is to use the legal term "as near as practicable" such that we can be assured that it's not in any way intended to be reflective of any kind of quota. But that "as near as practicable" would be reflective.
Senator Dardenne: The language that is being kicked around next door on the education committee uses the word "generally reflects the diversity of the state" and I don't know if that's the new catch-phrase instead of as near as practicable, but I would suggest we look at. Tell me what it is you want to suggest.
Senator Jones: Well, what I want to suggest right now is "as near as practicable" since that is already in statutes in other areas of the law and if it becomes a consensus new term then I will offer the consensus new term at the appropriate time.
Senator Dardenne: Yolanda, what is the full phraseology?
Yolanda Dixon: Insert "who shall be representative of the state's population as near as practicable".
Senator Jones: Yes.
Senator Dardenne: Senator Jones offers that amendment and that would be inserted in both places for legislative appointments and gubernatorial appointments.
Senator Jones: Yes.
Senator Dardenne: Okay. Any discussion or comments by anyone in the audience on the amendment? Any questions or comments, members? Any objection to the amendment? Alright, without objection the amendment is adopted.
At most Senator Jones stated: "In years past what we've said is to use the legal term `as near as practicable' such that we can be assured that it's not in any way intended to be reflective of any kind of quota. But that `as near as practicable' would be reflective." Having said that, however, there was no discussion of what would be "reflective". The population of Louisiana is diverse indeed. Did the legislature intend that phrase to be reflective of: male versus female, black versus white versus American Indian, Eskimo or Aleuts versus Asian or Pacific Islanders versus other races, high school graduates versus college graduates, young versus middle aged versus older citizens, Democrats versus Republicans versus Independents, conservatives versus middle-of-the-roaders versus liberals, professionals versus non-professionals, Jews versus Christians, Roman Catholics versus Protestants, the physically able versus the physically disabled, gays versus non-gays, and the list can go on and on?
We cannot discern from the evidence of the Senate Committee transcripts much less from the bare language of the statute, what the legislature intended with the questioned phraseology. We pretermit any discussion of whether it would be unconstitutional under La. Const. Art. 1, § 3, for the legislature to mandate that appointments to any board or commission correspond to population percentages based on male versus female, black versus white, or any other classification which may be repugnant to the state constitution.
"Practicable" is defined in Webster's Third New International Dictionary as possible, capable of being put into practice, done or accomplished, or feasible. We must bear in mind that these eleven appointments to this board are made seven by the governor, subject to Senate confirmation, and two by each house of the legislature. In making his appointments, the governor apparently has many facts to consider in determining which nominees he will select, and whether they be confirmed by the Senate. The House and the Senate may have similar considerations in selecting their appointments. In dealing with a similar issue, the United States Court of Appeal for the Fifth Circuit in James v. Wallace, 533 F.2d 963, 968 (5th Cir.1976) said, "until it is shown the policies espoused by the governor and put into practice by his appointees violate the constitutional rights of any of the state's citizens, the governor must be accorded the right to use subjective criteria in selecting the persons whom he appoints *847 to implement his policies." That this particular board has a quasi-judicial function in the area of governmental ethics or that the membership will have staggered terms does not in our view change the result.
Finally, the legislature has not definitively proscribed the membership of the board, other than one member from each of the congressional districts and that a retired justice or judge be appointed. The legislature has granted to the governor certain appointments without a defined criteria for their selection. Absent a clear definition of what the legislature intended, it would be very inappropriate for the judicial branch to intervene between the two political branches of government and determine that the legislature intended the membership of this board to correspond numerically to the population makeup of the state along racial and gender lines, particularly in light of the fact that the legislature is one of the appointing authorities.

WRIT APPLICATION
Relator contends that the trial court erred in failing to grant the Board's peremptory exception raising the objection of no cause of action. Relator argues that plaintiff's challenge to the makeup of the Board is a collateral attack on the authority, capacity and right of the Board members to perform their official duties.
In his "Supplemental Petition," plaintiff attacks the validity of the makeup of the Board as not in compliance with the statute creating the Board. Plaintiff does not pick, choose or select which Board member or members violate the statute, nor does he personally claim he is entitled to be a member of this board, but rather attacks the Board in its entirety. We view this as a collateral attack on the right to office of these Board members. As the supreme court said in State v. Johnson, 249 La. 950, 192 So.2d 135 (1966), writ denied, 388 U.S. 923, 87 S.Ct. 2144, 18 L.Ed.2d 1374 (1967). "for reasons of public policy, the acts of a de facto officer are valid as to third persons and the public until the officer's title to office is adjudged insufficient. In the meantime, the officer's authority may not be collaterally attacked or inquired into by third persons." Id., 192 So.2d at 145-146. See also State v. Stripling, 354 So.2d 1297 (La.1978).
But, even if this action is not a collateral attack on the validity of the membership of this board, it is an attack on the right of the Board members to the office to which they have been appointed. As such, we note on our own motion, La.Code Civ.Pro. art. 927, that plaintiff does not have a right of action to contest the "right to office" of these board members. La.R.S. 42:76 and 77 provide that only the attorney general of the state, a district attorney of the parish in which the case arises against the offender, the governor, or a person demanding possession of the office may bring such an action. La.R.S. 42:76 and 77.
As we held in Inniswold-Jefferson Terrace Civic Association, Inc. v. Louisiana Health Services & Indemnity Company, Inc., 396 So.2d 348, 352 (La.App. 1st Cir.1981), "[I]f the plaintiff thought the [Board] was illegally constituted it had an adequate remedy to test the validity of the appointments under La. R.S. 42:76."
Further in Nunez v. Mintz, 613 So.2d 197-198 (La.App. 1st Cir.1992), writ denied, 614 So.2d 86 (La.1993), we held:
The statutes dealing with actions to challenge a right to office, LSA-R.S. 42:76 and LSA-R.S. 42:77, give an exclusive list of those who have a right of action to bring an intrusion-into-office action or writ of quo warranto: the attorney general, a district attorney, the governor, or someone who claims the office allegedly being intruded upon. Accord, City of Plaquemine v. Medlen, 393 So.2d 301 (La.App. 1st Cir. 1980) and Regira v. Falsetta, 405 So.2d 850 (La.App. 1st Cir.1981), reversed in part, 405 So.2d 825 (La.1981), appeal dismissed, 455 U.S. 914, 102 S.Ct. 1267, 71 L.Ed.2d 454 (1982).
Without the necessity of citing a number of cases, the jurisprudence has been consistent. The right to question the authority by which someone holds public office belongs to a limited number of individuals as provided by La.R.S. 42:76 and 77. The provisions of La. Code Civ.Pro. art. 3901 authorizing a quo *848 warranto proceeding do not expand the substantive law as found in La.R.S. 42:76 and 77. Small v. Levy, 355 So.2d 643 (La.App. 4th Cir.), writ denied, 361 So.2d 450 (La.1978).
Therefore, for the above and foregoing reasons, the judgment of the trial court is reversed. We recognize and maintain the peremptory exception raising the objection of no right of action, dismiss plaintiff's suit, and recall, vacate and set aside his application for writs, all at his costs.
REVERSED AND RENDERED. WRIT RECALLED, VACATED, AND SET ASIDE.
NOTES
[1] Act No. 64 of the First Extraordinary Session of 1996 created the Board of Ethics which replaced the former Board of Ethics for Elected Officials and the former Commission on Ethics for Public Employees. For convenience sake, we will refer to the defendant as the Board of Ethics and/or the Board.